**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE ONEIDA GROUP INC.<br><br>     Plaintiff,<br><br>     - against -<br><br>STEELITE INTERNATIONAL U.S.A. INC.,<br>TABLEWERKS, INC., RICHARD ERWIN, STEVEN<br>LEFKOWITZ, and ANTHONY DELOSREYES<br><br>     Defendants. | Civil Action No.: _____<br><br>**JURY TRIAL DEMANDED** |

## VERIFIED COMPLAINT

Plaintiff The Oneida Group Inc. ("Oneida") for its Verified Complaint states, upon personal knowledge as to its own actions and on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is an action for injunctive relief, as well as damages, based on trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a), unfair competition under New York common law, trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, New York state common law pertaining to misappropriation of trade secrets, Ohio state laws pertaining to misappropriation of trade secrets, Ohio Rev. Code § 1333.61 *et seq*., breach of contract, and tortious interference with business relations.

## THE PARTIES

2. Plaintiff Oneida is a Delaware corporation with its principal place of business at 519 N. Pierce Ave, Lancaster, Ohio 43130.  Oneida Ltd. is a wholly-owned subsidiary of Oneida and has a place of business in Oneida, New York.

3.      Defendant Steelite International U.S.A. Inc. ("Steelite") is a New Jersey corporation having a principal place of business at 154 Keystone Drive, New Castle, Pennsylvania 16105.  Steelite maintains a place of business at 1140 Broadway #1201, New York, New York 10001 and conducts business in New York and in this District.

4.      Defendant Tablewerks, Inc., also known as North Rock Trading Company, Inc. ("Tablewerks"), is a New York corporation having a principal place of business at 24 Audrey Avenue, Oyster Bay, New York 11771.

5.      Defendant Richard Erwin ("Erwin") is an individual residing at 12 Sound Bay Drive, Lloyd Harbor, New York 11743.

6.      Defendant Steven Lefkowitz ("Lefkowitz") is an individual residing at 6 Taft Drive, Smithtown, New York 11787.

7.      Defendant Anthony DeLosReyes ("DeLosReyes") is an individual residing at 3 Yardley Drive, Dix Hills, New York 11746.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the Defend Trade Secrets Act, 18 U.S.C. § 1836(c), and 28 U.S.C. §§ 1331, 1338. This Court has supplemental jurisdiction over the other claims asserted herein, pursuant to 28 U.S.C. § 1367.

9.      Defendants are subject to this Court's personal jurisdiction pursuant to due process and/or the New York Long Arm Statute, due at least to their presence in the State, the substantial business conducted in this forum, directly and/or through intermediaries, including having solicited business in the State of New York, transacted business within the State of New York and attempted to derive financial benefit from residents of the State of New York, including benefits directly related to the causes of action set forth herein, and having placed their

2

products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in New York and in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because each Defendant is subject to personal jurisdiction in this District, and either resides in this District, has regularly conducted business in this District, and/or the events giving rise to this action, or a substantial part thereof, occurred in this District.

<u>**ONEIDA AND ITS PROMINENCE IN THE INDUSTRY**</u>

11.     Oneida is one of the world's largest designers and sellers of stainless steel and silver-plated cutlery and tableware for the consumer and foodservice industries.  It is also the largest supplier of dinnerware to the foodservice industry in North America.  The company operates in the United States, Canada, Mexico, Latin America, Europe, and Asia marketing and distributing tabletop products, which include flatware, dinnerware, crystal stemware, glassware, and kitchen tools and gadgets.  The company originated in the mid-nineteenth century in Oneida, New York.  In the 1990's, Oneida Limited began focusing on design and marketing of its products that are globally sourced.  Design, sales, marketing, advertising, procurement, customer service, legal, and operational support are based in various locations, including in Oneida, New York.

12.     Oneida is a leading global marketer of tabletop and food preparation products for the consumer and foodservice markets.  With a comprehensive line of tabletop and food preparation solutions, Oneida markets products globally under a broad range of well-known consumer brands including Oneida and Anchor Hocking.  Oneida operates glass manufacturing plants in the U.S. and sources a variety of proprietary designed tableware products from outside the U.S.

13.     For over twenty (20) years, Oneida has sourced Oneida's premier dinnerware products from Royal Porcelain Public Co., Ltd. ("Royal Porcelain"), a dinnerware manufacturer in Thailand, through Tablewerks, the purportedly exclusive North American distributor of Royal Porcelain.  This extensive business relationship included, among other things, an agreement that Oneida had the exclusive right to sell dinnerware products in North America that Royal Porcelain supplied through Tablewerks, an agreement by Tablewerks and Royal Porcelain not to supply any competitors with designs selected by Oneida, and the provision of substantial sums by Oneida for equipment and tooling to allow Royal Porcelain to make Oneida's dinnerware products.

14.     Unbeknownst to, and without the consent or consultation of, Oneida, Steelite purportedly acquired substantially all of the assets and rights of Tablewerks on December 12, 2016.  On December 13, 2016, Steelite's President and CEO John Miles sent a letter ("Steelite Letter") (a true and correct copy of which is attached as Exhibit 1) advising Oneida of this acquisition.

15.     Thereafter Steelite refused to recognize any contractual relationship between Oneida and Tablewerks.  Although the Steelite Letter stated that Steelite "will respect any valid intellectual property owned by" Oneida, Steelite has not kept its commitment.  Steelite has recently started offering and selling Oneida's dinnerware designs without Oneida's authorization.

16.     The Steelite Letter also falsely stated that there was no contractual relationship between Oneida and Tablewerks or Royal Porcelain and that it would fulfill only existing purchase orders for Oneida products sourced from Royal Porcelain.  After the date of the Steelite

Letter, Steelite initially rejected purchase orders submitted by Oneida but has since agreed, based on recent negotiations, to fulfill certain purchase orders submitted by Oneida for a short period.

17.     Since the purported acquisition of Tablewerks, Steelite has stepped into the shoes of Tablewerks in material ways such that the acquisition amounts to a merger or consolidation and Steelite is a mere continuation of Tablewerks.  On information and belief, Steelite (i) retained all or nearly all of the employees and management of Tablewerks, (ii) provides the same distribution of products that had been supplied through Tablewerks, (iii) has maintained a continuity of assets because it purportedly acquired substantially all assets of Tablewerks, (iv) has continued business operations since the purported acquisition, as evidenced by the continued fulfillment of existing Oneida purchase orders as agreed in the Steelite Letter, and (v) holds itself out as the successor enterprise to Tablewerks for providing products manufactured by Royal Porcelain.

### ONEIDA'S TRADE DRESS

18.     Oneida offers elegant tabletop solutions in an impressive variety of shapes and bodies suitable for luxury- and fine-dining establishments to casual eateries.  Oneida's dinnerware is known for its unequaled design relevance in the marketplace, durability, practicality, and detail.  These offerings include brands like SANT' ANDREA® that include the highest quality bright white porcelain, translucent bone china, or MAXADURA alumina porcelain in a variety of shapes and styles.  With a prestigious heritage, distinctive shapes, and exceptional craftsmanship, the elite SANT' ANDREA® brand, established in 1990, evokes European tradition and unites modern themes with timeless classic design, gracing prestigious fine-dining establishments all over the world.  The dinnerware products marketed under the SANT' ANDREA® brand carry a consistent and inherently distinctive trade dress developed by

Oneida.  Oneida's portfolio of patterns in the SANT' ANDREA® brand include the BOTTICELLI®, NEXUS™, TRAPEZE™, SAHARA™, ROYALE™, FUSION™, CIRCA™, CROMWELL™, QUEENSBURY™, MOOD™, IMPRESSIONS™, MONTAGUE™, OTHELLO™, TENOR™, CATO™, SURREY™ dinnerware lines.

19.     Oneida owns the trade dress on the products of Oneida's SANT' ANDREA® brand because, *inter alia*, Oneida developed the designs of these products, including Oneida's BOTTICELLI® and NEXUS™ dinnerware, Oneida's name appears with the products bearing the trade dress and in the advertisements and promotions of those products, Oneida maintains the quality and uniformity of the products bearing the trade dress, and the public identifies the products as Oneida's and poses product questions to, and makes product complaints to, Oneida.

### *Oneida's BOTTICELLI® Dinnerware*

20.     In the 1990s, Oneida worked with world-renowned designers David Queensberry and Martin Hunt to help Oneida develop distinctive dinnerware for foodservice and institutional settings to invoke European styling and dining, that ultimately resulted in the BOTTICELLI® line, examples of which are depicted below:





21.     Since the introduction of the BOTTICELLI® design and trade dress in 2001, Oneida has expanded the line of BOTTICELLI® dinnerware to provide a comprehensive solution for the foodservice and institutional industry.

22.     The BOTTICELLI® design and trade dress has gained nationwide recognition and acclaim.  The BOTTICELLI® design and trade dress has been cited for its success in industry publications such as the *Tabletop Journal*.  Oneida has earned several accolades for the BOTTICELLI® design and trade dress, including dinnerware awards in the banquet, catering, and resort industries.  For example:

- Dinnerware winner of tabletop competition at Hotel Experience Show in New York (2015)

- Banquet and Catering First Place: Piazza, Canton, Ohio (2014)

- Club and Resort, Honorable Mention: Brookside Country Club, Canton, Ohio (2014)

23.     The elements of the BOTTICELLI® trade dress and design, which include the images in paragraph 20 above and Exhibit 2, comprise a combination of features that include:

- Patterned organic circle-shaped texturing on the top outer surface of plates, platters, and saucers;

- Patterned organic circle-shaped texturing on the outer surface of cups, bowls, and mugs;

- A steep leaf rim angle on plates and platters;

- A smooth flat center well area on plates and saucers differentiated from the patterned top outer surface;

- A smooth interior area on bowls and cups differentiated from the patterned outer surface; and

- A rim geometry on all products that has a thick portion near the end of the rim and tapers to a rounded edge at the tip of the rim.

(collectively, the "BOTTICELLI® Trade Dress").

24.     The BOTTICELLI® Trade Dress is unique, distinctive, and nonfunctional, and it is not necessary for others to use this trade dress to compete in the marketplace.  The unique and distinctive look and feel of the BOTTICELLI® Trade Dress identifies and distinguishes the BOTTICELLI® dinnerware from competitors' products.

25.     Oneida has invested millions of dollars in advertising, promoting, and selling BOTTICELLI® dinnerware, and Oneida's promotion, and sale of dinnerware embodying the BOTTICELLI® Trade Dress has been continuous since its introduction in 2001.  Oneida prepares catalogs for its customers, advertises on its website, and attends more than twenty (20) trade shows throughout the United States where it features the BOTTICELLI® lines.  In addition, Oneida frequently makes presentations featuring its dinnerware products, including BOTTICELLI®, to its existing clients and to prospective clients.  Oneida also advertises the BOTTICELLI® line in select print publications.  True and correct copies of representative examples of Oneida's advertisements reflecting the prominent use of the BOTTICELLI® Trade Dress are attached hereto as Exhibit 2.

26.     Oneida's marketing efforts have been incredibly successful.  The commercial foodservice and institutional industry has come to recognize and immediately associate the

8

BOTTICELLI® Trade Dress with Oneida as a result of the extensive and continuous promotion and sales of dinnerware emphasizing the BOTTICELLI® Trade Dress for more than fifteen years. As a result of these efforts, the BOTTICELLI® Trade Dress has acquired appreciable secondary meaning, which identifies and distinguishes the BOTTICELLI® dinnerware from dinnerware offered by competitors.

27.     Oneida's BOTTICELLI® trade dress for the BOTTICELLI® dinnerware represents highly valuable goodwill owned by Oneida.

**_Oneida's NEXUS™ Dinnerware_**

28.     In 2007 and 2008, Oneida again worked with world-renowned designers David Queensberry and Martin Hunt to help Oneida develop a distinctive dinnerware line with a unique, arcing decoration adorning a fashion-forward shape for contemporary tabletop arrangements, that resulted in the NEXUS™ line, examples of which are depicted below:







29.     Since the introduction of the NEXUS™ design and trade dress in 2009, Oneida has expanded the line of NEXUS™ dinnerware to provide a comprehensive solution for the foodservice and institutional industry.

30.     The NEXUS™ design and trade dress has gained nationwide recognition and acclaim.  The NEXUS™ design has been cited for its success in industry publications such as the *Tabletop Journal*.

31.    The elements of the NEXUS™ trade dress, which include the images in paragraph 28 above and Exhibit 3, comprise a combination of features that include:

- A decal comprising decorative concentric circles around the perimeter rim of plates, platters, saucers, and shallow bowls;

- A decal comprising decorative concentric circles on the outer surface of cups, deep bowls, and mugs;

- A square-shaped inside smooth surface framed by the decal on round plates and saucers;

- A trapeze-like arcuate-shaped inside smooth surface framed by the decal on square and rectangular plates, platters, and certain bowls;

- The juxtaposition of square and circle shapes within a single piece plates, bowls, and saucers; and

- Either the use of a standard footring, or flat foot surface on the bottom of all of the products.

(collectively, the "NEXUS™ Trade Dress").

32.    The NEXUS™ Trade Dress is unique, distinctive, and nonfunctional, and it is not necessary for others to use this trade dress to compete in the marketplace.  The unique and distinctive look and feel of the NEXUS™ Trade Dress identifies and distinguishes the NEXUS™ dinnerware from competitors' products.

33.    Oneida has invested millions of dollars in advertising, promoting, and selling NEXUS™ dinnerware, and Oneida's promotion, and sale of dinnerware embodying the NEXUS™ Trade Dress has been continuous since its introduction in 2009.  Oneida prepares catalogs for its customers, advertises on its website, and attends more than twenty (20) trade shows throughout the United States where it features the NEXUS™ line.  In addition, Oneida frequently makes presentations featuring its dinnerware products, including NEXUS™, to its existing clients and to prospective clients.  Oneida also advertises the NEXUS™ line in select print publications.  True and correct copies of representative examples of Oneida's

11

advertisements reflecting the prominent use of the NEXUS™ Trade Dress are attached hereto as

Exhibit 3.  Certain of these advertisements expressly state that the NEXUS™ Trade Dress is

Oneida property that will be enforced:

> The Nexus™ dinnerware configuration constitutes proprietary trade dress.  Rights
> in the trade dress will be enforced against unauthorized simulations.  Oneida Ltd.
> owns the trademark Nexus™ and is the exclusive distributor of the dinnerware in
> the United States.

34.      Oneida's marketing efforts have been incredibly successful.  The commercial

foodservice and institutional industry has come to recognize and immediately associate the

NEXUS™ Trade Dress with Oneida as a result of the extensive and continuous promotion and

sales of dinnerware emphasizing the NEXUS™ Trade Dress for nearly ten years.  As a result of

these efforts, the NEXUS™ Trade Dress has acquired appreciable secondary meaning, which

identifies and distinguishes the NEXUS™ dinnerware from dinnerware offered by competitors.

35.      Oneida's NEXUS™ trade dress for the NEXUS™ dinnerware represents highly

valuable goodwill owned by Oneida.

## ONEIDA'S TRADE SECRETS

36.      Through its efforts and investment, Oneida has developed a great deal of valuable

trade secret, confidential, and proprietary information regarding the marketing and sale of its

products.  These trade secrets concern valuable marketing, sales, and strategy information and

include, but are not limited to, (1) Oneida's "where to play and how to win" business strategy

that includes information about customer segmentation and product category particularized by

sub-category and sub-channels, (2) Oneida's go-to market strategy for interacting with customers

based on proprietary developed customer segmentation and end-user analysis, (3) Oneida's

product margins, costs, rebate programs, other trade spend activities, and proposed changes in

those rebate programs and trade spend activities, (4) Oneida's costs, margins, and expected

pricing of customer specific designs, and (5) Oneida's customer sales forecasting and customer-specific account strategy.

37.     The above-described trade secrets are extremely valuable to Oneida because they are secret, extremely difficult, costly, and time-consuming to develop, and are only known to a select few people at Oneida, and because such information is not made public and is not easy, or is impossible, to ascertain independently.

38.     Oneida has exercised reasonable efforts to preserve the secrecy of the above-described trade secrets and confidential information.  Among other such measures, Oneida's employees and consultants, in consideration for their compensation and receipt of confidential Oneida information, are required by Oneida to sign agreements not to divulge to any unauthorized person, or to use for any unauthorized purpose, any secret, confidential, or private information connected with Oneida's business.  Oneida also requires all third parties, such as vendors and suppliers, to execute non-disclosure and/or confidentiality agreements not to disclose to any unauthorized person or entity, any secret, confidential, or private information connected with Oneida's business.  In addition, Oneida maintains a Global Employee Handbook and Policy Guide (the "Handbook") that provides requirements for protecting Oneida trade secrets and confidential information.  For example, the Handbook states that "No employee shall disclose client information or confidential business information to any third party…."  The Handbook prohibits "Unauthorized copying, removal, or misuse of company records, blueprints, materials, products, or confidential information, including photographs" and prohibits "divulg[ing] trade secrets or otherwise confidential information of the company."  Oneida further maintains and follows a formal Records Retention Policy that *inter alia* requires documents

containing Oneida trade secrets and confidential information to be properly secured and, when

necessary, disposed of in a secure manner to prevent unauthorized disclosure.

### TABLEWERKS' RELATIONSHIP WITH ONEIDA

39.     Defendant Erwin is the President of Tablewerks and has served as Oneida's point

of contact at Tablewerks for at least twenty (20) years.

40.     On April 1, 2007, Tablewerks and Oneida entered into an agreement entitled

Business Requirements for All Vendors of Oneida Ltd. ("Vendor Agreement").  The Vendor

Agreement expressly limits the ability of Tablewerks to use designs supplied to Oneida.

Pertinent portions of Paragraphs 4 and 5 of the Procurement section of the Vendor Agreement (a

true and correct copy of which is attached as Exhibit 4), provide as follows:

> Designs Supplied by Buyer [Oneida]:  Seller [Tablewerks] will use designs
> supplied by Buyer exclusively for the manufacture of goods for Buyer or its
> subsidiaries and warrants that it will not manufacture, give or sell goods
> incorporating, or otherwise give or sell said designs to any third party.  Buyer
> retains all rights, title and interest in any and all designs furnished by it hereunder.
>
> Designs Supplied by Seller [Tablewerks]:  Seller agrees that any design supplied
> by it for the manufacture of goods for Buyer's account will be for the sole and
> exclusive use of Buyer and its Subsidiaries….

41.     None of the parties have terminated the Vendor Agreement, and the Vendor

Agreement is valid and in force.

42.     On January 17, 2011, Tablewerks, Oneida, and Royal Porcelain entered into a

Confidentiality Agreement ("Tablewerks Confidentiality Agreement") pursuant to which

Tablewerks made certain commitments concerning Oneida's confidential information.

Specifically, paragraphs 1-3 and 6 of the Tablewerks Confidentiality Agreement (a true and

correct copy of which is attached as Exhibit 5) (emphasis added), provide as follows:

> 1. CONFIDENTIAL INFORMATION.  In the process of quoting and producing
> an Oneida proprietary dinnerware shape VENDOR ("the Project"), VENDOR

14

will receive from Oneida certain information, including but not limited to, technical drawings, prototypes and other proprietary information regarding a new dinnerware shape (jointly "Confidential Information"). Upon each and every disclosure of Confidential Information, VENDOR will have a duty to protect and keep confidential all Confidential Information. Unless otherwise designated by Oneida in advance, Oneida deems all information provided to VENDOR under this agreement confidential.

2. <u>NON-DISCLOSURE</u>. **VENDOR agrees (a) not to disclose or reveal Confidential Information to any person other than its officers and employees who are actively and directly participating in the Project or who otherwise need to know the Confidential Information for the purpose of the Project and (b) not to use the Confidential Information for any purpose other than in connection with the Project** including but not limited to using the information to produce dinnerware for competitors of Oneida or for its own benefit. All Confidential Information in tangible form, disclosed or created hereunder, shall be returned to Oneida at Oneida's written request.

3. <u>TERMINATION</u>. Termination of this Agreement shall not relieve VENDOR of any confidentiality obligation with respect to Confidential Information disclosed or developed hereunder prior to termination.

6. <u>REMEDIES</u>. **In the event of any breach or threatened breach by VENDOR of its obligations hereunder, Oneida shall be deemed to have suffered irreparable harm and shall be entitled to seek and obtain equitable relief in the form of temporary restraining orders and preliminary injunctions to enforce this Agreement. Such remedies shall be in addition to any other remedies available at law or in equity. Furthermore, VENDOR shall be responsible for and shall indemnify Oneida for all costs incurred while enforcing this Agreement, including but not limited to, attorney fees and court costs**. In addition to the foregoing, in the event that it can be shown that VENDOR's breach of its obligations hereunder directly or indirectly cause or contribute to a loss of or decline in sales of Oneida dinnerware product, VENDOR will indemnify Oneida for three (3) times the amount of the resulting loss of Oneida revenue.

43. None of the parties have terminated the Tablewerks Confidentiality Agreement, and the Tablewerks Confidentiality Agreement is valid and in force.

44. Tablewerks continues to owe a contractual duty to Oneida not to disclose or use Oneida's trade secrets or confidential information without Oneida's authorization. Tablewerks also owes a contractual duty to Oneida not to oppose Oneida's present request for injunctive

relief and expressly agrees to pay all costs and attorneys' fees for enforcing the Tablewerks Confidentiality Agreement.

## LEFKOWITZ'S RELATIONSHIP WITH ONEIDA

45.    Defendant Lefkowitz acted a sales representative for Oneida for approximately twenty-five (25) years.  Over this period of time, Defendant Lefkowitz helped develop and manage Oneida's business relationship with various foodservice and institutional customers. Defendant Lefkowitz was also paid to co-develop, along with Oneida's other personnel, sales strategies, launch plans, customer-contact tactics, etc. tailored to the dinnerware market.

46.    On May 15, 2014, Defendant Lefkowitz entered into a letter agreement with Oneida (the "Lefkowitz Agreement") under which Defendant Lefkowitz agreed to serve as an independent sales representative, agreed to noncompetition and nonsolicitation covenants, and agreed not to reveal to any unauthorized person, or to use for his own benefit, any confidential or proprietary information connected with Oneida's business.  Paragraph 5 of the Lefkowitz Agreement (a true and correct copy of which is attached as Exhibit 6) (emphasis added), provides as follows:

5. Restrictive Covenants.

(a) Noncompetition.  In consideration of the Service Fees, while this Agreement remains in effect **you agree that you will not, directly or indirectly, engage**, whether as a proprietor, partner, principal, joint venture participant, employer, agent, employee, consultant, officer, director or investor, alone or in association with any other person, firm, corporation or other entity (other than an owner of less than one percent of the capital stock of a publicly traded entity), **in any business or activity that competes with the business conducted by the Company in the geographical area in which it is engaged or will engage in such business during such period**.

(b) Nonsolicitation.
(i) You agree that while this Agreement remains in effect, **you will not in any way, directly or indirectly**, whether as a proprietor, partner, principal, joint venture participant, employer, agent, employee, consultant, officer, director or

16

investor, alone or in association with any other person, firm, corporation or other entity, for purposes of selling, or otherwise soliciting the purchase of, a product or service that competes with any product or service sold by the Company, **call upon, solicit, advise or otherwise do, or attempt to do, business with any person or entity who is, or was during your employment, a client or customer of the Company, or take away or interfere or attempt to take away or to interfere with any customer, trade, business, patronage or affair of the Company**. Notwithstanding anything contained in this Section 5, Company agrees that you may engage in business activities with clients or customers of the Company so long as the products and/or services offered for sale to such clients or customers do not compete with products or services offered by the Company.

(ii) You agree that during the Term you will not in any way, directly or indirectly, whether as a proprietor, partner, principal, joint venture participant, employer, agent, employee, consultant, officer, director or investor, alone or in association with any other person, firm, corporation or other entity, solicit, induce to leave, hire (or attempt to hire) or otherwise interfere (or attempt to interfere) with any person or entity who is at such time, or was during the term of this Agreement, an employee, officer, consultant, representative or agent of the Company.

(c) Confidentiality.  **You agree that at no time during the Term or thereafter will you, except in performance of the Services, directly or indirectly, reveal to any person, entity or other organization or use for your own benefit any information deemed to be confidential or proprietary by the Company relating to the assets, liabilities, employees, goodwill, business or affairs of the Company, including, without limitation, any information concerning past, present or prospective customers, suppliers, manufacturing processes or marketing data, or any other confidential or proprietary information** ("Confidential Information"). You further agree that you will not, without the prior written consent of the Company, remove or take from the Company's premises (or if previously removed or taken, at the Company's request, to promptly return) any written Confidential Information or any copies or extracts thereof. Upon the request and at the expense of the Company, you will promptly make all disclosures, execute all instruments and papers and perform all acts reasonably necessary to vest and confirm in the Company, fully and completely, any and all rights in Confidential Information.

\*\*\*

(d) Return of Company Property.  Upon the termination of this Agreement for any reason, you will immediately return all property and material in your possession that belongs or relates to the Company, including all originals and copies of files, writings, reports, memoranda, diaries, notebooks, notes of meetings or presentations, data, computer software and hardware, diskettes, cellular phones, drawings, charts, photographs, slides, patents, or another form of record which contains information belonging to or created or produced by, for or at the direction of the Company, or any employee or agent thereof.

(e) <u>Rights and Remedies Upon Breach</u>. **The parties acknowledge and agree that any breach of the covenants in this Section [5] will cause immediate and irreparable injury, direct or indirect, to the Company and that money damages will not provide adequate remedy. You therefore agree that if you violate any of the restrictions covenants hereunder, the Company will be entitled, among and in addition to any other rights or remedies available under this Agreement or at law or in equity, to temporary and permanent injunctive relief, without bond or other security, to prevent you from committing or continuing a breach of such covenants**. If you breach any of your obligations under this Section [5], the Company may, upon written notice to you, terminate its obligations to make any further payments to you as described in Section [4].

47.     During his contractual relationship with Oneida, Defendant Lefkowitz had access to and obtained some or all of at least the trade secrets defined above.

48.     Defendant Lefkowitz continues to owe a contractual duties to Oneida, including not to disclose or use Oneida's trade secrets or confidential information without Oneida's authorization.  Lefkowitz also owes a contractual duty to Oneida not to oppose Oneida's present request for injunctive relief.

49.     On or about January 3, 2017, Defendant Lefkowitz sent a letter to Oneida seeking to terminate his contract and stated that he "will remain with the company for 30 days through the end of business Friday, February 3, 2017 to assist in any transition of my responsibilities." (A true and correct copy of this letter is attached as Exhibit 7.)

50.     On information and belief, Defendant Lefkowitz has accepted employment or entered into a consulting relationship with Steelite and/or Tablewerks.

51.     On or about January 4, 2017, Defendant Lefkowitz met with an Oneida employee to return Oneida property but failed to return all property and materials in his possession that belongs to or relates to Oneida.  Defendant Lefkowitz claimed to have deleted all Oneida-related property and materials on his computer prior to the meeting.  Defendant Lefkowitz refused to let Oneida personnel access the computer to search for Oneida property and materials.  Rather,

Defendant Lefkowitz only provided Oneida with copies of certain files that Defendant Lefkowitz personally selected from his computer.  During his meeting with an Oneida employee Defendant Lefkowitz performed certain requested searches on his computer and additional Oneida-related materials were discovered despite his assertions that all Oneida related property and materials had already been deleted and were included in the copies provided to Oneida.  Defendant Lefkowitz would not permit the Oneida employee to review the material uncovered by the computer search and instead allegedly deleted all responsive files.

## FOSTER SULLIVAN'S RELATIONSHIP WITH ONEIDA

52.     Foster Sullivan ("Sullivan") acted a sales representative for Oneida for at least ten (10) years.  Over this period of time, Sullivan helped develop and manage Oneida and Oneida's business relationship with various foodservice and institutional customers.

53.     On March 1, 2012, Sullivan entered into an agreement with Oneida (the "Sullivan Agreement") under which Sullivan agreed to serve as a consulting sales representative and agreed not to reveal to any unauthorized person, or to use for his own benefit, any information deemed confidential or proprietary.  Paragraph 5 of the Sullivan Agreement (Exhibit 8), provides as follows:

> 5.  Non-Disclosure of Confidential Information. Consultant agrees that the Confidential Information (defined below) is the exclusive property of Company and shall not be used by Consultant or any of Consultant's representatives or affiliates except strictly in the performance of Services hereunder.  Consultant shall not, misappropriate or disclose or make available any Confidential Information to anyone· at any time during or after the Term or subsequent to the termination of this Agreement for any reason, except as required in the performance of the Consultant's Services.  Upon termination of this Agreement, Consultant shall return all copies of any Confidential Information to Company.  For purposes of this Agreement, "Confidential Information" means all proprietary and/or non public information concerning or related to the business, operations, financial condition or prospects, Intellectual Property, Developments, inventions, discoveries, trade secrets, financing sources, strategies, plans, processes, techniques, methods, formulae, ideas and know-how of Company, regardless of the form

in which such information appears and whether or not such information has been reduced to a tangible form whether or not such information has been marked "Confidential."

54.     During his relationship with Oneida, Sullivan had access to and obtained some or all of at least the trade secrets defined above.

55.     Sullivan continues to owe a contractual duty to Oneida not to disclose or use Oneida's trade secrets or confidential information without Oneida's authorization.

56.     On January 20, 2017, Oneida terminated its relationship with Sullivan.

57.     On information and belief, Sullivan has accepted employment or entered into a consulting relationship with Steelite and/or Tablewerks.

58.     Sullivan has provided at least Tablewerks and Rick Erwin with Oneida's confidential, proprietary, and trade secret information.

## ANTHONY DELOSREYES' RELATIONSHIP WITH ONEIDA

59.     Defendant DeLosReyes has been a sales employee for Oneida for twenty-one (21) years and was most recently vice president of the hotel and gaming division.  Over this period of time, Defendant DeLosReyes helped develop and manage Oneida's business relationship with various customers.

60.     On January 23, 1997, Defendant DeLosReyes entered into an Employee Patent and Confidential Information Agreement with Oneida (the "DeLosReyes Agreement") under which Defendant DeLosReyes agreed not to disclose any information concerning the Company's trade secrets without written consent.  Paragraph D of the DeLosReyes Agreement (a true and correct copy of which is attached as Exhibit 9), provides as follows:

D. THAT I WILL NOT DISCLOSE AT ANY TIME (EXCEPT AS MY COMPANY DUTIES MAY REQUIRE) EITHER DURING OR SUBSEQUENT TO MY EMPLOYMENT, ANY INFORMATION, KNOWLEDGE OR DATA OF THE COMPANY I MAY RECEIVE OR DEVELOP DURING THE COURSE OF MY EMPLOYMENT RELATING TO FORMULAS, BUSINESS PROCESSES, METHODS, MACHINES, MANUFACTURERS,

COMPOSITIONS, INVENTIONS, DESIGNS, DISCOVERIES OR OTHER
MATTERS CONCERNING THE COMPANY'S TRADE SECRETS, EXCEPT
AS THE COMPANY MAY OTHER WISE CONSENT IN WRITING.

61.     During his employment with Oneida, Defendant DeLosReyes had access to and
obtained some or all of at least the trade secrets defined above.

62.     Defendant DeLosReyes continues to owe a contractual duty to Oneida not to
disclose or use Oneida's trade secrets or confidential information without Oneida's authorization.

63.     Defendant DeLosReyes also received the Handbook, and agreed that he would
comply with the policies contained in the Handbook.  The Handbook provides in pertinent part:
"At no time, while using the company's Internet access, may you disparage the company or
divulge trade secrets or otherwise confidential information of the company."

64.     On or about December 30, 2016, Defendant DeLosReyes sent a letter of
resignation to Oneida stating that his last day of employment will be January 13, 2017 and that
he has "accepted a job with another company that suits my needs…."  (A true and correct copy
of this letter is attached hereto as Exhibit 10.)

65.     On information and belief, on January 3, 2017, Defendant DeLosReyes connected
an external memory drive to his Oneida laptop computer and copied files from his Oneida laptop
computer to the external memory drive.

66.     On information and belief, Defendant DeLosReyes has accepted employment or a
consulting relationship with Steelite and/or Tablewerks.

## **DEFENDANTS' WRONGFUL CONDUCT**

67.     On information and belief, each of at least Erwin, Lefkowitz, and DeLosReyes
has become associated, formally or otherwise, with Steelite.

68.     Steelite and/or Tablewerks has started offering and selling dinnerware designs from the SANT' ANDREA® brand, including products bearing Oneida's BOTTICELLI® Trade Dress and NEXUS™ Trade Dress.  In their new roles with Steelite, Lefkowitz and DeLosReyes have started offering and selling Steelite dinnerware products that bear the exact same designs as those from Oneida's SANT' ANDREA® brand, including products bearing the BOTTICELLI® Trade Dress and NEXUS™ Trade Dress.

69.     On information and belief, Steelite and/or Tablewerks has informed Oneida's customers that Oneida will not be able to provide SANT' ANDREA® brand dinnerware products once Oneida runs out of inventory and that such products will only be available through Steelite.

70.     Certain key Oneida customers have indicated that that they plan to switch from purchasing dinnerware from Oneida to purchasing dinnerware from Steelite as soon as this month, and have further indicated that they will purchase tableware from whoever has control over products previously manufactured by Royal Porcelain for Oneida.

71.     Steelite and/or Tablewerks has also falsely informed certain Oneida customers that Steelite has acquired the rights to the dinnerware designs and the rights to the distribution of products previously manufactured by Royal Porcelain for Oneida.

72.     Oneida has the exclusive right to sell dinnerware products that have been supplied by Tablewerks and Royal Porcelain for Oneida.  For example, Tablewerks and Erwin agreed that Oneida has global distribution rights to sell the BOTTICELLI® and NEXUS™ dinnerware lines supplied by Royal Porcelain.  Steelite does not have the right to sell any dinnerware designs supplied by Tablewerks and manufactured by Royal Porcelain for Oneida.

73.     Steelite and Tablewerks have infringed Oneida's trade dress by marketing, promoting, offering, and selling dinnerware products bearing designs from Oneida's SANT'

ANDREA® brand, including products bearing the BOTTICELLI® Trade Dress and NEXUS™
Trade Dress.

74.     In mid-January 2017, Oneida's business and legal representatives traveled to
Youngstown, Ohio for an in-person meeting with Steelite.  The parties agreed to a standstill
agreement while there were further discussions.  In early February, Oneida participated in good
faith in a mediation in Pittsburgh, again sending its top business and legal representatives.
Exiting the mediation, Oneida was led to believe that the parties were still in good faith
negotiations and were on pace to amicably resolve all disputes.  Oneida entered another standstill
agreement on that basis.

75.     Within forty-eight hours of the mediation, on February 9-11, 2017, at the North
American Association of Food Equipment Manufacturers ("NAFEM") trade show in Orlando,
Florida, Steelite displayed products identical to Oneida's SANT' ANDREA® line of products.

76.     On information and belief, at that trade show and elsewhere Steelite told
customers that by March 1, 2017, it would deliver the products from Royal Porcelain that Oneida
had exclusively sold and that Steelite's new products would be identical to Oneida's.

77.     At the NAFEM, Steelite displayed and offered dinnerware products bearing the
exact same designs of those from Oneida's SANT' ANDREA® brand, including products
bearing Oneida's BOTTICELLI® Trade Dress that were manufactured by Royal Porcelain under
the name "Belisa."  Steelite's "Belisa" products are identical to Oneida's BOTTICELLI®
dinnerware and include all of the elements of Oneida's distinctive BOTTICELLI® Trade Dress.

| Oneida's BOTTICELLI® Products | Steelite's "Belisa" Products |
|---|---|



78.     Steelite's use of Oneida's intellectual property is clearly calculated to confuse consumers into believing that Oneida has authorized, endorsed, or sponsored Steelite dinnerware products bearing the exact same designs of those from Oneida's SANT' ANDREA® brand, including products bearing Oneida's BOTTICELLI® Trade Dress, or they are affiliated or associated with Oneida, all in violation of Oneida's intellectual property rights.

79.     Steelite's copying and use of Oneida's intellectual property in its marketing or advertising, as well as its offering and sale of dinnerware products bearing the exact same designs of those from Oneida's SANT' ANDREA® brand, including products bearing Oneida's BOTTICELLI® Trade Dress, is a clear and deliberate attempt to trade upon Oneida's valuable

reputation and goodwill, absent any authorization from Oneida.  Indeed, a likelihood of

confusion of Steelite's dinnerware products with Oneida's SANT' ANDREA® brand, due to

Steelite's wholesale copying, in bad faith, of Oneida's intellectual property, can be presumed.

80.     A significant proportion of the consuming public is likely to be confused by

Steelite's use of Oneida's intellectual property in the manner described above and is likely to

believe that Steelite's dinnerware products bearing the exact same designs of those from

Oneida's SANT' ANDREA® brand derive from Oneida or are associated or affiliated with,

and/or endorsed or sponsored by, Oneida.

81.     Oneida has not provided, and no Defendant has received, written authorization

permitting the disclosure of Oneida trade secrets or confidential information to any other entity.

Neither Steelite nor Tablewerks or Erwin has a right to acquire and/or use any Oneida trade

secrets or confidential information disclosed without authorization from Oneida.

82.     On information and belief, Steelite, Tablewerks, and/or Erwin conspired with and

induced one or more of Lefkowitz, DeLosReyes, and/or others to threaten to misappropriate

Oneida trade secrets and confidential information in violation of contractual obligations owed to

Oneida, and in violation of federal and state laws.  For example, in offering and selling Steelite

dinnerware products bearing Oneida's distinctive trade dress to Oneida's customers, Lefkowitz

and DeLosReyes must be disclosing or using Oneida's trade secrets to benefit Steelite and to

injure Oneida.  As another example, Sullivan sent an email to Erwin at Tablewerks that

contained a link and credentials for accessing a confidential video from Oneida's CEO that

includes Oneida trade secrets and confidential information.  In addition, on May 31, 2014,

February 29, 2016, and April 21, 2016, Sullivan forwarded confidential Oneida information to

Rick Erwin of Tablewerks.  None of Steelite, Tablewerks, or Erwin sought or obtained Oneida's permission to receive or use such information.

83.     On information and belief, each of the Defendants knowingly acquired, disclosed, and/or used Oneida trade secrets and confidential information to injure Oneida.

84.     On information and belief, each of the Defendants threatens to misappropriate Oneida's trade secrets and confidential information and, due to the nature of the trade secrets, will inevitably disclose and/or use Oneida's trade secrets and confidential information to injure Oneida.

85.     On information and belief, each of the Defendants will inevitably disclose Oneida's trade secrets and confidential information unless prevented from selling Royal Porcelain products that were previously sold at any time under Oneida's brands, including but limited to the SANT' ANDREA® brand and the BOTTICELLI® and NEXUS™ dinnerware lines.

86.     As a direct consequence of Defendants' conduct, Oneida has suffered and will continue to suffer substantial and irreparable harm, including, but not limited to: (i) the loss of customers' trust and confidence; (ii) the creation of confusion among customers as to Oneida's connection with, or endorsement or authorization of, Defendants and Steelite's infringing products; (iii) the loss of customers' goodwill; (iv) the threatened loss of customers; (v) the actual loss of customers and assets; (vi) injury to reputation; (vii) the disclosure and misappropriation of Oneida trade secrets and confidential information; and (viii) other economic harm to be shown.

87.     In addition, Defendants have enriched themselves at Oneida's expense by advertising and selling products that appropriates and exploits Oneida's protectable trade dress as

well as Oneida's goodwill and reputation.  Among the benefits Defendants have gained from this

conduct are increased revenues from the sale of their infringing products using the Oneida trade

dress, through consumer confusion as to the source of the products or their association or

connection with or endorsement of or authorization by Oneida, and increased goodwill.

88.     Additionally, if Defendants are not enjoined from using and further

misappropriating Oneida's trade secrets and confidential information to unfairly solicit

customers, Oneida will be irreparably harmed.

89.     Defendants, either directly or indirectly, threaten to and/or have utilized Oneida

trade secrets and confidential information for the purpose of soliciting customers and interfering

with their business relations with Oneida.

## FIRST CAUSE OF ACTION
### Against Steelite and Tablewerks for
### Trade Dress Infringement Under the Lanham Act
### (15 U.S.C. § 1125(a))

90.     Oneida repeats and re-alleges each and every allegation in the foregoing

paragraphs as if fully set forth herein.

91.     Oneida owns the trade dress for dinnerware designs from Oneida's SANT'

ANDREA® brand, including Oneida's BOTTICELLI® Trade Dress and NEXUS™ Trade Dress,

which are non-functional, inherently distinctive, and also have acquired substantial secondary

meaning in the marketplace by virtue of their use by Oneida in connection with the promotion

and sale of goods and services, and have developed valuable goodwill associated therewith.

92.     Defendants Steelite and Tablewerks' infringement and use in commerce of the

exact same designs of those from Oneida's SANT' ANDREA® brand, including Oneida's

BOTTICELLI® Trade Dress and NEXUS™ Trade Dress has caused or is likely to cause

confusion, mistake, or deception as to (i) the affiliation, connection, or association of Oneida

with Defendants Steelite and Tablewerks and their goods and commercial activities, and/or (ii) the origin, sponsorship, endorsement, or approval of Defendants Steelite and Tablewerks' goods and commercial activities by Oneida, in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93.     On information and belief, Defendants Steelite and Tablewerks' infringement of Oneida's trade dress associated with Oneida's SANT' ANDREA® brand, including Oneida's BOTTICELLI® Trade Dress and NEXUS™ Trade Dress is willful, deliberate, and in bad faith.

94.     Oneida has no adequate remedy at law.  Defendants Steelite and Tablewerks' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Oneida's trade dress rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

95.     Due to Defendants Steelite and Tablewerks' violations of the Lanham Act, Oneida is entitled to injunctive relief, actual and compensatory damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and interest.

**SECOND CAUSE OF ACTION**
**Against Steelite and Tablewerks for**
**Trade Dress Infringement Under New York Common Law**

96.     Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

97.     Steelite and Tablewerks' conduct as alleged above constitutes infringement and misappropriation of the Oneida trade dress for dinnerware designs from Oneida's SANT' ANDREA® brand, including Oneida's BOTTICELLI® Trade Dress and NEXUS™ Trade Dress in violation of Oneida's rights under common law and in equity.

98.     Upon information and belief, Steelite and Tablewerks' actions were deliberate, willful, and in conscious disregard of Oneida's rights.

99.     Steelite and Tablewerks' conduct as alleged above has caused and/or will cause Oneida to suffer injury, for which it has no adequate remedy at law.

100.    Oneida is entitled to injunctive relief, actual damages in an amount to be determined at trial, to have such damages trebled, to Steelite and Tablewerks' profits, to the costs of this action, and to attorneys' fees.

**THIRD CAUSE OF ACTION**
**Against Steelite, Tablewerks, Erwin, Lefkowitz, and DeLosReyes for**
**Unfair Competition Under New York Common Law**

101.    Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

102.    Defendants Steelite and Tablewerks' unauthorized use in commerce of Oneida's trade dress associated with Oneida's SANT' ANDREA® brand, including Oneida's BOTTICELLI® Trade Dress and NEXUS™ Trade Dress is likely to cause confusion as to the source, sponsorship, affiliation, or endorsement of those products.

103.    Through their unauthorized use in commerce of Oneida's trade dress associated with Oneida's SANT' ANDREA® brand, including Oneida's BOTTICELLI® Trade Dress and NEXUS™ Trade Dress, Defendants Steelite and Tablewerks have unfairly misappropriated the significant commercial advantage belonging to Oneida by trading on the business, reputation, and goodwill of Oneida's trade dress.

104.    On information and belief, Defendants Steelite, Tablewerks, Erwin, Lefkowitz, and DeLosReyes have each taken and exploited, or are threatening to exploit, Oneida's confidential, proprietary, and trade secret information in unfair competition with Oneida.

105.    On information and belief, Defendants Steelite, Tablewerks, and Erwin have also engaged in unfair competition by knowingly and intentionally (i) soliciting multiple high level Oneida sales representatives who possessed Oneida's confidential, proprietary, and trade secret information (ii) using that information to solicit and divert Oneida's clients; and (iii) copying Oneida's trade dress and attempting to pass it off as Steelite's own designs.

106.    Defendants' conduct has adversely affected the operations of Oneida while, at the same time, permitted Steelite, Tablewerks, and Erwin to immediately supplant Oneida in its market position by offering identical products to identical clients.

107.    On information and belief, Defendants' unfair competition is willful, deliberate, and in bad faith.

108.    Oneida has no adequate remedy at law.  Defendants' conduct has caused, and, if not enjoined, will continue to cause immediate and irreparable damage to Oneida's trade dress rights, business, reputation, and goodwill in a manner that cannot be adequately calculated or compensated in money damages alone.

109.    Due to Defendants' violations of the New York unfair competition common law, Oneida is entitled to injunctive relief to prevent Defendants from engaging in further acts of unfair competition, as well as actual, compensatory, and punitive damages in an amount to be determined at trial, disgorgement of profits, attorneys' fees, costs, and interest.

## FOURTH CAUSE OF ACTION
**Against Steelite, Tablewerks, Erwin, Lefkowitz, and DeLosReyes for Actual or Threatened Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*)**

110.    Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

111.   Oneida owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

112.   This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

113.   Oneida has taken reasonable measures to keep such information secret and confidential.

114.   This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the acquisition, disclosure, or use of the information.

115.   In violation of Oneida's rights, Defendants threaten to misappropriate and/or have misappropriated Oneida's trade secrets and confidential information to injure Oneida.

116.   Defendants have failed to return Oneida's confidential and trade secret information, and attempted to conceal the theft of such information.  On information and belief, if Defendants' conduct is not remedied, and if Defendants are not enjoined, Defendants will acquire, disclose, and/or use for their own benefit and to Oneida's detriment, Oneida's trade secret information.

117.   As the direct and proximate result of Defendants' conduct, Oneida has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

118.    Because Oneida's remedy at law is inadequate, Oneida seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

119.    Oneida's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will suffer irreparable harm absent injunctive relief.

120.    Oneida has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Against Steelite, Tablewerks, Erwin, and DeLosReyes for Actual or Threatened**
**Misappropriation of Trade Secrets Under New York law**

121.    Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

122.    Oneida owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

123.    This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

124.    Oneida has taken reasonable measures to keep such information secret and confidential.

125.    This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

32

126.    In violation of Oneida's rights, Defendants Steelite, Tablewerks, and Erwin threaten to misappropriate and/or have misappropriated Oneida's trade secrets and confidential information and, due to the nature of the trade secrets, will inevitably disclose and/or use Oneida's trade secrets and confidential information to injure Oneida.

127.    Steelite, Tablewerks, and Erwin have failed to return Oneida's confidential and trade secret information, and attempted to conceal the theft of such information.  On information and belief, if Defendants Steelite, Tablewerks, and Erwin's conduct is not remedied, and if Defendants Steelite, Tablewerks, and Erwin are not enjoined, Defendants Steelite, Tablewerks, and Erwin will acquire, disclose, and/or use for their own benefit and to Oneida's detriment, Oneida's trade secret information.

128.    As the direct and proximate result of Defendants Steelite, Tablewerks, and Erwin's conduct, Oneida has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

129.    Because Oneida's remedy at law is inadequate, Oneida seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

130.    Oneida's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will suffer irreparable harm absent injunctive relief.

131.    Oneida has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

## SIXTH CAUSE OF ACTION
### Against Lefkowitz for
**Misappropriation of Trade Secret Under the Ohio Uniform Trade Secrets Act**
**(Ohio Rev. Code § 1333.61 *et seq.*)**

132.    Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

133.    Oneida owns and possesses certain confidential, proprietary, and trade secret information, as alleged above.

134.    This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped, and/or ordered in, interstate or foreign commerce.

135.    Oneida has taken reasonable measures to keep such information secret and confidential.

136.    This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the acquisition, disclosure or use of the information.

137.    Defendant Lefkowitz threatens to misappropriate and/or has misappropriated Oneida's trade secrets and confidential information and, due to the nature of the trade secrets, will inevitably disclose and/or use Oneida's trade secrets and confidential information to injure Oneida.

138.    On information and belief, Defendant Lefkowitz has failed to return Oneida's confidential and trade secret information, and attempted to conceal the theft of such information. On information and belief, if Defendant Lefkowitz's conduct is not remedied, and if Defendant

Lefkowitz is not enjoined, Defendant Lefkowitz will acquire, disclose, and/or use for his own benefit and to Oneida's detriment, Oneida's trade secret information.

139.    As the direct and proximate result of Defendant Lefkowitz's conduct, Oneida has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

140.    Because Oneida's remedy at law is inadequate, Oneida seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

141.    Oneida's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will suffer irreparable harm absent injunctive relief.

142.    Oneida has been damaged by all of the foregoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### Against Steelite and Tablewerks for
### Breach of Contract

143.    Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

144.    Oneida's valid and enforceable contracts with Tablewerks – the Tablewerks Confidentiality Agreement and the Vendor Agreement – expressly preclude Tablewerks from (1) selling Oneida designs supplied from Royal Porcelain to anyone other than Oneida and (2) using, disclosing, or otherwise misappropriating any trade secret or proprietary information belonging to Oneida, both during its relationship with Oneida and afterwards.  Oneida has fully performed

all promises and obligations required of it in accordance with the terms and conditions of these contracts.

145.    By virtue of its purported acquisition of substantially all of the assets and rights of Tablewerks on December 12, 2016, Steelite is the successor in interest to Tablewerks' liabilities, including at least the Vendor Agreement and the Tablewerks Confidentiality Agreement, which are binding on successors in interest.

146.    Steelite, as Tablewerks' successor in interest, has breached at least the Vendor Agreement and the Tablewerks Confidentiality Agreement by, *inter alia*, (1) offering and selling products previously supplied from Royal Porcelain to Oneida directly to Oneida's customers and (2) acquiring, using, disclosing, or otherwise misappropriating Oneida's trade secret and proprietary information without authorization and for the benefit of someone other than Oneida.

147.    Tablewerks has breached at least the Vendor Agreement and the Tablewerks Confidentiality Agreement by, *inter alia*, (1) offering and selling products previously supplied from Royal Porcelain to Oneida directly to Oneida's customers and (2) acquiring, using, disclosing, or otherwise misappropriating Oneida's trade secret and proprietary information without authorization and for the benefit of someone other than Oneida.

148.    As a direct and proximate result of Steelite and Tablewerks' breaches of the Tablewerks Confidentiality Agreement and the Vendor Agreement, Oneida has been damaged in an amount in excess of the jurisdictional limits of this Court.

## EIGHTH CAUSE OF ACTION
### Against Steelite, Tablewerks, Erwin, Lefkowitz, and DeLosReyes for
### Tortious Interference with Business Relations

149.    Oneida repeats and re-alleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

150.    Defendants had knowledge of the existing business relations between Oneida and its customers.

151.    Defendants, directly or indirectly, have sought to interfere with Oneida's business relations with its customers by entering into the type of acquisition Steelite purportedly made of Tablewerks in view of the long history between Oneida and Tablewerks and/or by making misrepresentations to Oneida's customers, with the intention of cutting off Oneida's supply to its customers.

152.    On information and belief, Defendants intentionally and willfully interfered with Oneida's business relations with its customers.

153.    The actions of Defendants were done with the unlawful purpose of causing damage to Oneida, without justifiable cause.

154.    As a result of the foregoing, Oneida has suffered and will continue to suffer substantial harm and injury in an amount that cannot be adequately compensated by money damages.

155.    Injunctive relief is necessary to prevent imminent and irreparable harm.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Oneida respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A.    Enjoining and restraining Defendants, their officers, agents, servants, employees, successors, and all persons acting in concert with them from the marketing, promoting, offering for sale, selling, and distributing products bearing Oneida's trade dress associated with Oneida's SANT' ANDREA® brand, including Oneida's BOTTICELLI® Trade Dress or NEXUS™ Trade Dress;

B. Enjoining and restraining Defendants, their officers, agents, servants, employees, successors, and all persons acting in concert with them from refusing to accept and fulfill any commercially reasonable purchase order Oneida presents for product sourced through Royal Porcelain bearing Oneida's SANT' ANDREA® brand;

C. Enjoining Defendants, their officers, agents, servants, employees, successors, and all persons acting in concert with them from violating any legal and contractual duties to Oneida, from using any Oneida's confidential and proprietary information, and order the return of all of Oneida's property;

D. Entering orders and preliminary and permanent injunctions requiring such affirmative acts as are appropriate to protect Oneida's trade dress, trade secrets, and contractual rights, including but not limited to ordering the return of all of Oneida's property and providing access to Defendant Lefkowitz's computer for imaging by Oneida;

E. Ordering Defendants to account for and pay to Oneida all gains, profits, and savings derived from their improper conduct;

F. Ordering Defendants to pay Oneida the damages sustained by Oneida as a result of Defendants' unlawful acts, including all damages measured by the value of the benefit obtained by Defendants and treble damages as provided by agreement or law;

G. Ordering Defendants to pay exemplary and punitive damages in an amount sufficient to punish Defendants and to deter similar conduct in the future;

H. Ordering Defendants to pay attorneys' fees and all other costs Oneida incurred in this action; and

I. Awarding such other relief as the Court deems just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Oneida demands trial by jury in this action of all issues so triable.

Dated:   February 21, 2017                MILBANK, TWEED, HADLEY & MCCLOY LLP

By:   */s/ Nathaniel T. Browand*
Christopher J. Gaspar*
Nathaniel T. Browand
Ryan Hagglund
MILBANK, TWEED, HADLEY & MCCLOY LLP
28 Liberty Street
New York, NY 10005
(212) 530-5000

Mark C. Scarsi
MILBANK, TWEED, HADLEY & MCCLOY LLP
2029 Century Park East – 33rd Floor
Los Angeles, CA 900067
(424) 386-4000

Kristin L. Yohannan*
MILBANK, TWEED, HADLEY & MCCLOY LLP
1850 K Street, NW, Suite 1100
Washington, D.C. 20006
(202) 835-7500

*Attorneys for Plaintiff*
*The Oneida Group Inc.*

*\* Pro hac vice admission to be requested promptly*

39

### **VERIFICATION**

STATE OF OHIO            )
                                        )   SS.
COUNTY OF FRANKLIN   )

       I, Corrie Byron, being duly sworn, hereby state:

1. I am President of Foodservice and International at The Oneida Group Inc.  I am authorized to verify the foregoing complaint; and

2. I have read the foregoing complaint and the averments contained therein, and verify that they are true and correct to the best of my information, knowledge, and belief.


_____
Corrie Byron


SWORN TO AND SUBSCRIBED
BEFORE ME, a Notary Public in the State
and County aforesaid, this 20th day of February, 2017.

_____
Notary Public

Tamara F. Kerns
Notary Public, State of Ohio
My Commission Expires 12-03-2020