# EXHIBIT 6

[EVERYWARE GLOBAL LETTERHEAD]

May 15, 2014

Mr. Steven Lefkowitz
6 Taft Drive
Smithtown, New York 11787

Livmat Sales, LLC
c/o 6 Taft Drive
Smithtown, NY 11787

Dear Steve:

This letter agreement (this "Agreement") sets forth our mutual agreement concerning the terms of your sales representation arrangement with EveryWare Global, Inc. (the "Company").

1. Services. You will be an independent sales representative focused on selling the Company's products in the foodservice channel. . In this capacity you will be responsible for prospecting, initiating, managing and closing sales transactions, including managing the Company's business relationship with various foodservice/institutional customers particularly with respect to large projects as designated from time to time by the Company (the "Services").

2. Term/Termination/Termination Penalty. The Term of this Agreement will be from May 15, 2014 to May 15, 2016. Notwithstanding the foregoing, you or the Company may terminate this Agreement prior to the end of the Term (including during any renewal period) by giving 30 days' prior written notice to the other party. This Agreement will automatically renew for additional one year terms, all of which will constitute the Term, unless either party gives notice of non-renewal to the other party at least thirty (30) days prior to the renewal date.

3. Responsibilities. You will devote to your duties such time and energy and will undertake such reasonable travel obligations as are sufficient to satisfactorily perform the Services. You will perform the Services to the best of your ability in good faith and in a professional manner at all times during the Term. During the Term, you will at all times and for all purposes be an independent contractor and not an employee or agent of the Company. You will have no power to bind the Company in contractual or other matters, and you will not hold yourself out as having such authority. Upon your submitting appropriate vouchers and related receipts for approved travel undertaken to perform the Services, Company will reimburse you for all air fare and other

transportation, hotel, meals, rental car, personal mileage, entertainment and other travel-related expenses incurred by you in the performance of this Agreement.

4. Service Fees. Subject to your complying with the terms and conditions of this Agreement and in consideration thereof, the Company will pay you the Service Fees set forth in Exhibit A attached hereto and made a part of this Agreement.

5. Restrictive Covenants.

(a) Noncompetition. In consideration of the Service Fees, while this Agreement remains in effect, you agree that you will not, directly or indirectly, engage, whether as a proprietor, partner, principal, joint venture participant, employer, agent, employee, consultant, officer, director or investor, alone or in association with any other person, firm, corporation or other entity (other than an owner of less than one percent of the capital stock of a publicly traded entity), in any business or activity that competes with the business conducted by the Company in the geographical area in which it is engaged or will engage in such business during such period.

(b) Nonsolicitation.

(i) You agree that while this Agreement remains in effect, you will not in any way, directly or indirectly, whether as a proprietor, partner, principal, joint venture participant, employer, agent, employee, consultant, officer, director or investor, alone or in association with any other person, firm, corporation or other entity, for purposes of selling, or otherwise soliciting the purchase of, a product or service that competes with any product or service sold by the Company, call upon, solicit, advise or otherwise do, or attempt to do, business with any person or entity who is, or was during your employment, a client or customer of the Company, or take away or interfere or attempt to take away or to interfere with any customer, trade, business, patronage or affair of the Company. Notwithstanding anything contained in this Section 5, Company agrees that you may engage in business activities with clients or customers of the Company so long as the products and/or services offered for sale to such clients or customers do not compete with products or services offered by the Company.

(ii) You agree that during the Term you will not in any way, directly or indirectly, whether as a proprietor, partner, principal, joint venture participant, employer, agent, employee, consultant, officer, director or investor, alone or in association with any other person, firm, corporation or other entity, solicit, induce to leave, hire (or attempt to hire) or otherwise interfere (or attempt to interfere) with any person or entity who is at such time, or was during the term of this Agreement, an employee, officer, consultant, representative or agent of the Company.

(c) Confidentiality. You agree that at no time during the Term or thereafter will you, except in performance of the Services, directly or indirectly, reveal to any person, entity or other organization or use for your own benefit any information deemed to be confidential or proprietary by the Company relating to the assets, liabilities, employees, goodwill, business or affairs of the Company, including, without limitation,

any information concerning past, present or prospective customers, suppliers, manufacturing processes or marketing data, or any other confidential or proprietary information ("Confidential Information"). You further agree that you will not, without the prior written consent of the Company, remove or take from the Company's premises (or if previously removed or taken, at the Company's request, to promptly return) any written Confidential Information or any copies or extracts thereof. Upon the request and at the expense of the Company, you will promptly make all disclosures, execute all instruments and papers and perform all acts reasonably necessary to vest and confirm in the Company, fully and completely, any and all rights in Confidential Information. This restriction will not apply to: (i) information approved for release by written authorization of the Company or (ii) information that may be required by law or an order of any court or government agency to be disclosed. In the event you believe you are, or have reason to believe you will be, required by any applicable law, discovery request and or legal process to such information, you will provide the Company's Legal Department with written notice no less than five business days prior to any such disclosure.

(d) Return of Company Property. Upon the termination of this Agreement for any reason, you will immediately return all property and material in your possession that belongs or relates to the Company, including all originals and copies of files, writings, reports, memoranda, diaries, notebooks, notes of meetings or presentations, data, computer software and hardware, diskettes, cellular phones, drawings, charts, photographs, slides, patents, or another form of record which contains information belonging to or created or produced by, for or at the direction of the Company, or any employee or agent thereof.

(e) Rights and Remedies Upon Breach. The parties acknowledge and agree that any breach of the covenants in this Section 4 will cause immediate and irreparable injury, direct or indirect, to the Company and that money damages will not provide adequate remedy. You therefore agree that if you violate any of the restrictions covenants hereunder, the Company will be entitled, among and in addition to any other rights or remedies available under this Agreement or at law or in equity, to temporary and permanent injunctive relief, without bond or other security, to prevent you from committing or continuing a breach of such covenants. If you breach any of your obligations under this Section 4, the Company may, upon written notice to you, terminate its obligations to make any further payments to you as described in Section 3.

6. Validity. The invalidity or unenforceability of any provision or provisions of this Agreement will not affect the validity or enforceability of any other provision of this Agreement, which will remain in full force and effect. Any provision of this Agreement held to be invalid or unenforceable will be reformed to the extent necessary to make it valid and enforceable.

7. Successors. This Agreement will inure to the benefit of and be binding upon and enforceable by the Company and its successors, permitted assigns, heirs, legal representatives, executors, and administrators.

8. <u>Governing Law</u>. This Agreement will be subject to the laws of the State of Ohio applicable to contracts executed in and to be performed therein.

9. <u>Entire Agreement</u>. Except for the Confidential Separation Agreement and General Release between Company and you (the "Release Agreement"), all prior negotiations and agreements between the parties hereto with respect to the matters contained herein are superseded by this Agreement and are null and void, and there are no representations, warranties, understandings or agreements other than those expressly set forth herein and in the Release Agreement.

10. <u>Withholding</u>. The payment of any amount pursuant to this Agreement will be subject to applicable withholding of taxes and such other deductions as may be required by law.

11. <u>Independent Contractor</u>. During the Term, your relationship to the Company and its affiliates will be that of an independent contractor, and nothing contained in this Agreement will be construed as creating a joint venture, partnership or employment arrangement. During the Term, you agree to discharge all obligations under federal, state, or local law, regulation or order then or thereafter in force arising out of your provision of services during the Term.

12. <u>Counterparts</u>. All executed copies of this Agreement will have the same force and effect and will be as legally binding and enforceable as the original. This Agreement may be executed in counterparts, each of which will constitute a single instrument.

13. <u>Assignment</u>. The Services under this Agreement are special and unique, and all such services and obligations and all of your rights under this agreement are personal to you and will not be assignable or transferable. In the event of your death, however, your personal representative will be entitled to receive any and all payments then due under this Agreement.

IN WITNESS WHEREOF, the parties have entered into this Agreement as of the date set forth above.

By: _____
Steven Lefkowitz

Livmat Sales, LLC


EVERYWARE GLOBAL, INC.

By: _____  6/6/14

Name: Bert Filice

Title: Sr. VP, North American Sales & Mktg.

**EXHIBIT A**

# ADDENDUM TO MAY 15, 2014 REPRESENTATIVE LETTER AGREEMENT

This Addendum to the Representative Letter Agreement dated May 15, 2014 ("Addendum") is an addendum to the agreement between **EVERYWARE GLOBAL, INC.** hereinafter referred to as ("Company") and **STEVEN LEFKOWITZ** and **LIVMAT SALES, LLC**, hereinafter collectively referred to as ("Representative"), which agreement is dated May 15, 2014 hereinafter referred to as ("Agreement") and shall become effective as this _1st_ day of February, 2015. The Agreement is attached hereto as Exhibit A and made a part of this document.

The Company and Representative, for good consideration, hereby agree as follows:

1. Service Fees paid by Company to Representative shall be in the amount of Nineteen Thousand One Hundred Sixty-Seven and no/100 Dollars ($19,167) per month.

All other provisions of the Agreement are to remain in full force and effect.

The parties have entered into this Addendum as of the date set forth above.

**LIVMAT SALES, LLC**

By: _/s/ Steven S. Lefkowitz_
Steven Lefkowitz

**EVERYWARE GLOBAL, INC.**

By: _/s/_
Name: _Erika Schoenberger_
Title: _Associate General Counsel_