# EXHIBIT 8

# CONSULTING AGREEMENT

This is a Consulting Agreement ("Agreement") dated as of March 1, 2012 (the "Effective Date") between Oneida Ltd. ( "Company"), 163-181 Kenwood Avenue, Oneida, New York 13421 and Select Products, LLC., a limited liability company organized and existing under the laws of the State of Florida with its principal office located at 840 Michigan Avenue, Miami, FL 33139 ( "Consultant").

**Recitals**

A.  Company is engaged in the business of marketing stainless steel flatware, china and dishware and other tabletop products.

B.  Consultant desires to provide marketing services for and on Company's behalf.

**THE PARTIES, INTENDING TO BE LEGALLY BOUND, AGREE AS FOLLOWS:**

1.  **Duties**. Consultant shall serve as a sales agent and consultant to Company, and otherwise assist Company by performing the services set forth on the Assignment Schedule attached as Attachment A hereto (the "Assignment Schedule"), as directed by Company (collectively, the "Services"). Consultant warrants to Company that the Services shall be performed in a professional, independent, proper, loyal, and efficient manner and Consultant shall be committed at all times to promote Company's interests and reputation. Consultant shall at all times operate within Company's policies and regulations, as in effect from time to time. The parties may create and/or amend the Assignment Schedule as mutually agreed upon, and will indicate their agreement by initialing the modified Assignment Schedule.

2.  **Independent Contractor**. Consultant is and will remain at all times an independent contractor, and no provision of this Agreement is intended to create any relationship of employment, joint venture, partnership, or agency between the parties. Consultant will have no authority to bind Company, represent Company in any way, or otherwise execute any documents by or on behalf of Company except as specifically authorized by an executive officer or Company's Board of Directors. Consultant shall not be eligible to participate in any benefit plans, programs or arrangements made available to Company employees. Company shall not be required to withhold from payments due pursuant to this Agreement any federal, state or local withholding or other taxes. Consultant agrees to indemnify, defend and hold Company harmless from and against any losses, claims, demands, liabilities, costs or expenses arising out of or with respect to the treatment of Consultant as an independent contractor, including without limitation any taxes, penalties or interest arising out of Company's failure to treat Consultant as an employee or Consultant's failure to make all required estimated payments and other tax payments to applicable federal, state and local taxing authorities.

3.  **Term and Termination**. This Agreement shall supersede any prior agreements and shall commence as of the Effective Date and shall remain in effect until terminated by either party on 30 days' written notice (the "Term"); provided that either party may terminate immediately this Agreement upon written notice in the event the other party (i) commits any act of gross negligence, willful misconduct or any other breach of its obligations under this Agreement, or (ii) becomes or is declared bankrupt or insolvent or enters into liquidation or is subject to any proceeding relating to its bankruptcy or insolvency. Notwithstanding anything herein to the contrary, the obligations of Consultant under paragraphs 5 through 8 shall continue notwithstanding termination of this Agreement

for any reason. If Company terminates this Agreement pursuant to this paragraph 3, Company will be obligated to pay Consultant the compensation due under paragraph 4 through the date of termination and as expressly indicated on Attachment B (the "Compensation Schedule"), and Company will have no further obligations under this Agreement.

4. **Compensation**. In consideration of the timely and proper performance by Consultant of his Services, Company agrees to pay Consultant during the Term (i) a $14,167 monthly consulting fee during the Term, (ii) an additional monthly consulting fee of $1331.86 which is intended to contribute towards payment of Consultant's monthly healthcare premiums, and (iii) the fees described in Attachment B, which will provide for compensation by Consultant for sales generated to Avendra, Marriott Hotels, Hilton Hotels, Sodexco, Aramark, RCCL, Carnival, NCL, and all other Cruise lines in Florida and New York. Company will also reimburse Consultant for any reasonable and documented expenses incurred in connection with the performance of Consultant's Services in accordance with the Company's Travel & Entertainment Policy then in effect. Any fees described in Attachment B will be less of any commissions or fees paid to other direct or indirect sales individuals that are owed any commissions on the accounts listed in this Agreement and as may be amended from time to time.

5. **Non-Disclosure of Confidential Information.** Consultant agrees that the Confidential Information (defined below) is the exclusive property of Company and shall not be used by Consultant or any of Consultant's representatives or affiliates except strictly in the performance of Services hereunder. Consultant shall not, misappropriate or disclose or make available any Confidential Information to anyone at any time during or after the Term or subsequent to the termination of this Agreement for any reason, except as required in the performance of the Consultant's Services. Upon termination of this Agreement, Consultant shall return all copies of any Confidential Information to Company. For purposes of this Agreement, "Confidential Information" means all proprietary and/or non public information concerning or related to the business, operations, financial condition or prospects, Intellectual Property, Developments, inventions, discoveries, trade secrets, financing sources, strategies, plans, processes, techniques, methods, formulae, ideas and know-how of Company, regardless of the form in which such information appears and whether or not such information has been reduced to a tangible form whether or not such information has been marked "Confidential."

6. **Assignment of Works and Inventions**.

(a) Consultant shall disclose promptly to Company or its nominee any and all works, inventions, discoveries and improvements authored, conceived or made by Consultant during the course of performing Consultant's Services (collectively, "Developments"), and hereby assigns and agrees to assign to Company or its nominee all of his rights, title and interest in and to any Developments.

(b) Consultant shall, and hereby does, irrevocably assign to Company, or to any party designated by Company, Consultant's entire right, title and interest in and to all Intellectual Property (as hereinafter defined) that are made, conceived, or developed by Consultant, in whole or in part, alone or jointly with others, within the scope of the Services performed by Consultant for the Company. Such assignment shall include, without limitation, all rights in and to such Intellectual Property. "Intellectual Property" shall mean all discoveries, inventions, designs, improvements, enhancements, ideas, concepts, techniques, know-how, software, documentation or other works of authorship, specifications, data and database technologies, developments, formulae, processes, and

LOULibrary 0123541.0591384 1243970v1

computer software and programs (including object and source code), whether or not copyrightable or patentable.

(c) Whenever requested to do so by Company, Consultant shall execute any and all applications, assignments or other instruments which Company shall deem necessary to protect Company's interest with respect to works, inventions, discoveries and improvements authored, conceived or made by Consultant during the course of performing Services, and the such obligations shall be binding upon Consultant's assigns, executors, administrators and other legal representatives. Consultant further recognizes and agrees that Consultant's duties may include the preparation of materials, including written or graphic materials or software, and that any such materials conceived or written by Consultant shall be done as "work made for hire" as defined and used in the Copyright Act of 1976, 17 USC §1 et seq. Consultant also hereby waives any and all of Consultant's moral rights, including but not limited to rights of attribution, paternity and integrity, arising under any federal or state law of the United States or any law of any other country, region or subdivision thereof, in and to Consultant's performance of Services, and hereby agrees that Company and Company's successors, assigns, and licensees or sub-licensees shall have all rights flowing from this waiver including, without limitation, the right to modify said work for any and all past, present or future uses now known or hereinafter discovered, and Consultant agrees to execute all further documentation, if any, necessary to implement or reflect this waiver.

7. **Return of Materials**. Upon the termination of this Agreement or the Services for any reason, or, at any time upon Company's request, Consultant shall cease use of, and Consultant and its representatives shall promptly deliver to Company (i) all correspondence, drawings, blueprints, manuals, letters, notes, notebooks, reports, flow-charts, discs, programs, proposals, laptops, cell phones and other hardware and any other documents or materials used, developed or prepared by Company or received, used, developed or prepared by Consultant in the performance of Services, and, without limiting the foregoing, and (ii) any and all other documents or tangible materials containing or constituting Confidential Information.

8. **Restrictions**.

(a) Consultant agrees that, while Consultant is engaged by Company and for a period of 12 months after the final expiration or termination of the Term, Consultant shall not, directly or indirectly, in any capacity whatsoever including, without limitation, as owner, employee or consultant (i) hire any person, or solicit or entice, or attempt to solicit or entice, any person to terminate, alter or leave the employ of Company, or (ii) solicit any supplier or customer of Company to terminate or alter its relationship with Company.

(b) Consultant agrees and covenants that he will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning Company's or any affiliate's products or services, and existing and prospective customers, suppliers, investors and other associated third parties, or make any maliciously false statements about Company's or any affiliate's employees and officers.

(c) The provisions contained in this paragraph 8 as to the time periods, geographic area and scope of activities restricted shall be deemed divisible, so that if any provision contained in

this paragraph 8 is determined to be invalid or unenforceable, that provision shall be deemed modified so as to be valid and enforceable to the full extent lawfully permitted.

9. **Severability**. The invalidity or unenforceability of any provision of this Agreement, or any word, phrase, clause, sentence or other portion thereof, shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect. If any of the covenants or provisions of this Agreement are determined to be unenforceable by reason of its extent, duration, scope or otherwise, then the parties contemplate that the court making such determination shall reduce such extent, duration, scope or other provision and enforce them in their reduced form for all purposes contemplated by this Agreement.

10. **Miscellaneous**.

(a) This Agreement shall be governed by and construed in accordance with the laws of the State of New York, excluding its choice of law provisions. Any action or proceeding by either party to enforce this Agreement shall be brought only in any state or federal court located in the State of New York, County of Oneida. The parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

(b) The provisions of this Agreement may be amended or waived only with the prior written consent of Company and Consultant, and no course of conduct or course of dealing or failure or delay by any party hereto in enforcing or exercising any of the provisions of this Agreement shall affect the validity, binding effect or enforceability of this Agreement or be deemed to be an implied waiver of any provision of this Agreement. The Consultant hereby specifically waives and releases the Company of any and all liability or obligations owed and due to Consultant under the Letter Agreement between Oneida Ltd and Foster Sullivan dated October 28, 2011 ("Letter Agreement); for the avoidance of doubt, the Letter Agreement is hereby terminated between the parties with no further liability.

(c) Company may assign this Agreement and any rights hereunder to (i) any of its affiliates, (ii) any successor to Company by means of merger, consolidation, purchase of Company's stock or otherwise and/or (iii) any assignee of Company in connection with the purchase and sale of all or any portion of Company's assets. Consultant may not assign this Agreement or any rights hereunder without the prior written consent of Company.

(d) This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and, in the case of Consultant, Consultant's heirs, executors and legal representatives.

(e) Consultant acknowledges and agrees that a remedy at law for any breach or threatened breach of the provisions of paragraphs 5 through 8 would be inadequate and, therefore, agrees that Company shall be entitled to injunctive relief in addition to any other available rights and remedies in case of any such breach or threatened breach; provided, however, that nothing contained herein shall be construed as prohibiting Company from pursuing any other rights and remedies available for any such breach or threatened breach. The prevailing party in any dispute regarding the enforcement of this Agreement will be entitled to its costs, including without limitation, its attorney's fees.

LOULibrary 0123541.0591384 1243970v1

(f) All notices or other communications required or permitted to be given or made hereunder shall be in writing and delivered personally or sent by pre-paid, first class, certified or registered air mail, return receipt requested to the intended recipient thereof at its or his address or facsimile number set forth in the preamble above. Any such notice or communication shall be deemed to have been duly given immediately (if given or made in person), or five days after mailing (if given or made by mail), and in proving same it shall be sufficient to show that the envelope containing such notice or communication was delivered to the delivery or postal service and duly addressed, or that receipt of a facsimile was confirmed by the recipient as provided above. Any party may change the address to which notices or other communications to such party shall be delivered by giving notice thereof to the other parties hereto in the manner provided herein.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the date first written above.

**ONEIDA, LTD.**

By: *Steven J. Lefkowitz*

Title: *Exec VP Foodservice*

**SELECT PRODUCTS, LLC.**

By: *Foster J. Sullivan*
Foster J. Sullivan, President

-5-

ATTACHMENT A
TO
CONSULTING AGREEMENT

Scope of Services

LOULibrary 0123541.0591384 1243970v1

# ATTACHMENT B
# TO
# CONSULTING AGREEMENT

Notwithstanding anything to the foregoing herein, the Consultant shall be eligible for a sales commission bonus based on gross margins (exclusive of allowances, returns, chargebacks, credits, or any other deductions properly or otherwise taken) calculated from the Effective Date through December 31, 2012 initially and thereafter during each calendar year on a year-over year basis on new business of the following accounts, which may be modified from time to time by the Company prior to the beginning of any new calendar sales commission period or calculated on a pro-rated basis otherwise, and excluding replacement and replenishment business:

AVENDRA *DGD*
Marriott International ~~(exclusive of Avendra)~~ *DGL*
Gaylord Hotels
Trump Hotels
Atlantic Purchasing
Hilton Hotels
Aramark
Sodexo
Compass
White Lodging
Sunstone Hotels
Royal Caribbean Cruise Lines
Carnival Cruise Lines
Celebrity Cruise Lines
Norwegian Cruise Lines
Holland America Cruise Lines
SEMINOLE-HARD ROCK   MOHEGAN SUN   KERZNER-ATLANTIS *DGL*

| Gross Margins | Commission |
| --- | --- |
| 40+% | 6% |
| 35-39.9% | 5% |
| 30-34.99% | 4% |
| 20-29.9% | 2% |
| 15-19.9% | 1% |
| Below 15% | 0% |

Such sales commission bonus shall be due and payable in accordance with the Company's past practices and policies, but in any event no later than April 15 following the calendar year end.

-7-