UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE ONEIDA GROUP INC.,

                Plaintiff,

       -against -

STEELITE INTERNATIONAL, USA, INC.,
TABLEWERKS, INC., RICHARD ERWIN,
STEVEN LEFKOWITZ and ANTHONY
DELOSREYES,

                Defendants.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 17-0957 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       Plaintiff The Oneida Group Inc. ("Plaintiff" or "Oneida"), commenced this action for injunctive relief and damages against Defendants Steelite International, USA, Inc. ("Steelite"), Tablewerks, Inc. ("Tablewerks"), Richard Erwin, Steven Lefkowitz and Anthony Delosreyes (collectively, "Defendants"). Plaintiff asserts claims for (1) trade dress infringement pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (2) unfair competition under New York law, (3) trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, (4) New York common law claims of misappropriation of trade secrets, (5) Ohio common law claims of misappropriation of trade secrets, (6) breach of contract, and (7) tortious interference with business relationship. Plaintiff has moved for a Temporary Restraining Order and Preliminary Injunction to prevent Steelite from delivering infringing products and also seeks leave to conduct limited discovery on an expedited basis.

       Presently before the Court is Plaintiff's motion for a temporary restraining order. On February 23, 2017 Judge Spatt referred the matter to this Court to issue a Report and

Recommendation.  Following a hearing on February 27, 2017, this Court recommended to Judge Spatt on February 28, 2017 that he enter a temporary restraining order maintaining the *status quo* pending the entry of this decision.  Defendants objected to that Order on the grounds that the temporary restraining order which was entered went beyond the evidence presented by the parties.   For the reasons set forth below, this Court respectfully recommends to Judge Spatt that the temporary restraining order, limited to the BOTTICELLI and NEXUS patterns, be continued through such time as a decision can be rendered on Plaintiff's request for a Preliminary Injunction. A hearing on the motion is currently set for April 10, 2017 at 9:30 am.

I.     **BACKGROUND**

The following information is taken from the allegations in the Complaint and the parties' submissions on this motion.   The facts summarized below and the legal conclusions following them are without prejudice to any subsequent findings made by Judge Spatt following a full preliminary injunction hearing.  *See Barefoot Contessa Pantry v. Aqua Star,* No.15-CV-1092, 2015 WL 845711, at *1 (S.D.N.Y. Feb. 26, 2015).

Plaintiff Oneida is a major designer and seller of cutlery and tableware to the consumer and foodservice industries and is the largest supplier of dinnerware to the foodservice industry in North America.  Compl. ¶ 11.   Oneida offers high quality bright white porcelain dinnerware through its Sant' Andrea brand.  *Id.*, ¶ 18.  The Sant' Andrea brand consists of a number of dinnerware patterns, including the BOTTICELLI and NEXUS patterns.  *Id*.  Certain of the dinnerware products sold by Oneida, including  the BOTTICELLI and NEXUS patterns, are manufactured by Royal Porcelain Public Co., Ltd. ("Royal Porcelain"), a dinnerware manufacturer located in Thailand.  *Id.,* ¶ 13.   Although this dinnerware is sourced from Royal

Porcelain, Oneida places its orders for products manufactured by Royal Porcelain with Defendant Tablewerks Inc. ("Tablewerks"), Royal Porcelain's exclusive North American distributor. *See* Plaintiff's Memorandum of Law in Support of Motion for a Temporary Restraining Order, Preliminary Injunction, and Order Granting Leave to Take Expedited Discovery ("Pl.'s Mem.") [DE 20] at 1.

Oneida began offering the BOTTICELLI line in 2001. Compl. ¶ 21. This pattern was developed by renowned designers David Queensberry and Martin Hunt. Compl. ¶ 20. The parties do not agree on whether or not Oneida provided input into the design process. *See* Declaration of David Queensberry in Opposition to Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Queensberry Decl.") [DE 24], ¶¶ 6-13. Oneida has earned accolades for its BOTTICELLI line from industry publications such as *Tabletop Journal*. Compl. ¶ 22. Tablewerks holds a patent on the design of the BOTTICELLI pattern because of rights assigned to it by Queensberry. *See* Declaration of Richard Erwin in Opposition to Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Erwin Decl.") [DE 27], ¶ 16. Oneida began offering the NEXUS line in 2008. Compl. ¶¶ 28-29. Again, there is a dispute with respect to the design of this pattern. Queensberry Decl., ¶¶ 12-14. Oneida has received similar recognition for this pattern. Compl. ¶ 30. Tablewerks also has a patent on the NEXUS pattern. Erwin Decl., ¶ 21.

The BOTTICELLI advertising materials offer a three-year limited warranty and claim that all pattern names and designs are the intellectual property of Oneida. Compl., Ex. 2 at 1-2. The NEXUS advertising material offers the same three-year limited warranty, similarly claims proprietary trade dress rights and also claims to be the exclusive distributor of NEXUS

dinnerware in the United States.  Compl., Ex. 3 at 35-36.

Plaintiff has provided an affidavit from Daniel Hoffman, Director of Food and Beverage Programs, Global Operation at Marriott International, Inc.  *See* Affidavit of Daniel Hoffman in Support of Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order (" Hoffman Aff." ) [DE 19] , ¶ 3.  Hoffman attests to the distinctive nature of the trade dress for both the BOTTICELLI and NEXUS patterns.  Hoffman Aff., ¶¶ 11-12.  The details of the claimed trade dress are also provided in the Declaration of Paul Gebhardt, Senior Vice for some speech President of Design and Creative Director of Oneida.  *See* Declaration of Paul Gebhardt in Support of Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Gebhardt Decl." ) [DE 18], ¶¶ 16-20, 25-28.  Similarly, the Complaint details the precise features of the BOTTICELLI and NEXUS patterns which give rise to Plaintiff's claim of trade dress infringement.  Compl. ¶¶ 23, 31.  The Complaint and several affidavits also provide pictures of the BOTTICELLI and NEXUS patterns and advertising materials.  Compl. ¶¶ 20, 21, 28; Gebhardt Decl., ¶¶ 16, 25, Ex. 4, 5; *see* Declaration of Corrie Byron in Support of Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Byron Decl." ) [DE 16], Ex. 1, 2.  Other than two pictures depicting dinnerware patterns currently offered by Steelite, which resemble patterns offered by Oneida, no other patterns are discussed by Plaintiff either in the Complaint or in any affidavits or declarations.  Accordingly, for purposes of this motion for a temporary restraining order, all "discussions" shall be limited to the BOTTICELLI and NEXUS patterns.

In December 2016, Defendant Steelite acquired the assets of Tablewerks and informed Oneida that it would no longer receive dinnerware from Royal Porcelain.  Compl., Ex. 1; Pl.'s

Mem., Ex. 1. Following this announcement (and Steelite's hiring of two of Oneida's key salespeople), the parties began negotiations to resolve this issue and entered into a "Standstill Agreement" on February 10, 2017. That Standstill Agreement is annexed as Exhibit 1 to the Declaration of Peter G. Siachos, Esq. ("Siachos Decl.") [DE 6], counsel to Defendant Steelite in this action. The Standstill Agreement stated that ". . . Steelite and Oneida will work in good faith through February 21st toward a potential settlement . . . and will refrain from initiating litigation during the Standstill Period." Siachos Decl., Ex. 1. While the Standstill Agreement was still in place, Steelite attended the North American Foodservice Equipment ("NAFEM") trade show and told customers that it would begin selling the dinnerware in question on March 1, 2017. According to affidavits presented by Plaintiff, Steelite also informed customers that Oneida would no longer be able to provide dinnerware manufactured by Royal Porcelain, specifically the BOTTICELLI and NEXUS patterns. *See* Declaration of Vincent Del-Cid in Support of Motion for Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Del-Cid Decl.") [DE 17], ¶¶ 6-12, Ex. 2-6; Byron Decl., ¶¶ 21-22. This litigation ensued.

**II.     LEGAL STANDARD**

The standard for obtaining a temporary restraining order is the same as the standard for obtaining a preliminary injunction. *See, e.g., EricMany Ltd. v. Agu*, No. 16-CV-2777, 2016 U.S. Dist. LEXIS 73016 (E.D.N.Y. June 3, 2016); *Oliva v. Brookwood Coram I, LLC*, No. 14-CVC-2513, 2015 WL 3637010, at *1 (E.D.N.Y. 2015); *Von Grabe v. Ziff Davis Publishing Co.*, No. 91 Civ. 6275, 1994 WL 719697, at *1 (S.D.N.Y. 1994). The purpose of a temporary restraining order "'is not to give the plaintiff the ultimate relief it seeks. It is to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.'" *PCS Wireless*

*LLC v. A to Z Wireless Solutions Inc.*, 841 F. Supp. 2d 649, 652 (E.D.N.Y. 2012) (quoting *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996)); *see J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 363 (E.D.N.Y. 2009) ("The purpose of a preliminary injunction is to prevent hardship and preserve the status quo until final determination of the action."). Because it "is one of the most drastic tools in the arsenal of judicial remedies," *Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986), injunctive relief is "an extraordinary remedy that should not be granted as a routine matter." *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990); *see Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.").

In order to obtain a temporary restraining order, the movant must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party seeking the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *accord Almontaser v. N.Y. City Dep't of Educ.*, 519 F.3d 505, 508 (2d Cir. 2008)). "The party seeking the injunction carries the burden of persuasion to demonstrate, 'by a clear showing,' that the necessary elements are satisfied." *Dexter 345 Inc. v. Cuomo*, No. 11 Civ. 1319, 2011 WL 1795824, at *1 (S.D.N.Y. May 3, 2011) *aff'd*, 663 F.3d 59 (2d Cir. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)); *see also Citibank, N.A. v. Cititrust*, 756 F.2d 273, 275 (2d Cir. 1985).

### III.   LEGAL STANDARD

#### A.   Irreparable Harm

Similar to the issuance of a preliminary injunction, "[t]he most important element in determining whether to grant a TRO is a demonstration by the movant that without the order, the movant is likely to suffer irreparable injury." *Von Grabe v. Ziff Davis Publishing Co.*, 1994 WL 719697, at *2.; *see Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233–34 (2d Cir. 1999); *Mitchell v. Century 21 Rustic Realty*, 233 F. Supp. 2d 418, 431 (E.D.N.Y.) *aff'd*, 45 F. App'x 59 (2d Cir. 2002) ("Proof of irreparable harm is the key to obtaining preliminary injunctive relief."). "Because of this, 'the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" *Dexter 345 Inc.*, 2011 WL 1795824, at *1 (quoting *Rodriguez*, 175 F.3d at 234); *see Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007). "If the movant fails to make a showing of irreparable harm, the motion for a preliminary injunction must fail." *Id.* (citing *Rodriguez*, 175 F.3d at 234 ("In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied.")).

To establish irreparable harm, movants must demonstrate "they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. V. Wabtec Corp.*, 559 F.3d 110, 118 ((2d Cir. 2009) (quoting *Grand River*, 481 F.3d at 66); *see, e.g.*, *Jackson Dairy*, 596 F.2d at 72. "To constitute 'irreparable' harm, an injury must 'be one incapable of being fully remedied by monetary damages.'" *Medgar Evers Houses Assocs., L.P. v. Carro*, No. 01-CV-6107, 2001 WL 1456190, at *4 (E.D.N.Y. Nov. 6, 2001) (quoting *Reuters Ltd. v. United Press*

*Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990)); *Rodriguez*, 175 F.3d at 234 (irreparable injury "cannot be remedied by an award of monetary damages"); *accord Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir.1989) ("The injury must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation."). The court must not "presume that the plaintiff will suffer irreparable harm;" rather, "the court must actually consider the injury the plaintiff will suffer if he or she loses on the preliminary injunction but ultimately prevails on the merits, paying particular attention to whether the 'remedies available at law, such as monetary damages, are inadequate to compensate for that injury.'" *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)); *see also Vox Amplification, Ltd. v. Meussdorffer,* No. CV 13-4922, 2014 WL 558866 at *5 (E.D.N.Y. Feb. 11, 2014) (applying *Salinger* standard to trademark cases).

"Loss of goodwill and injury to reputation are injuries that are difficult to measure in dollars, and thus, these types of injuries are irreparable harm." *Coastal Distribution v. Town of Babylon*, No. 05 CV 2032, 2006 WL 270252, at *3 (E.D.N.Y. Jan. 31, 2006), "Loss of good will is particularly hard to quantify because monetary damages do not 'redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come.'" *Marks Org., Inc., v. Joles*, 784 F.Supp.2d 322 (S.D.N.Y. 2011); *see also EricMany Ltd. v. Agu*, 2016 U.S. Dist. LEXIS 73016; *Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F. Supp.2d 432, 435-36 (S.D.N.Y. 2003).

Plaintiff here has demonstrated a loss of goodwill. According to unrefuted affidavits submitted by Plaintiff, as a result of its inability to fulfill orders and the confusion created by

Steelite's actions at the NAFEM trade show, Oneida has received instructions from customers to either put on hold or completely rescind approximately $ 1 million in already-placed orders for dinnerware products. Byron Decl., ¶ 22. Oneida has received emails and phone calls from customers asking for clarification of the situation with Steelite. Byron Decl., ¶¶ 17-22. Oneida has been supplier of this dinnerware to the foodservices industry for many years and has expended considerable effort and money to build up this brand. The loss of goodwill and confusion which will be created by allowing Steelite to sell the identical dinnerware, without first determining whether Steelite has the right to do so will be immeasurable. In view of the foregoing analysis, the Court finds Plaintiff has demonstrated that it will suffer irreparable harm if Steelite is allowed to sell the allegedly infringing dinnerware prior to a ruling on the preliminary injunction.

### B.  Sufficiently Serious Questions Regarding the Merits

Having satisfied the first prong of the test for a temporary restraining order, the Court next examines whether Plaintiff has demonstrated a substantial likelihood of success on the merits or sufficiently serious questions going to the merits to make them fair grounds for litigation, with the balance of the hardships tipping decidedly in Plaintiff's favor. *See D.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006); *Sunward Elecs*. v. *McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).[1]

To prevail on a Lanham Act claim for trade dress infringement, Plaintiff must show:

---

[1] Plaintiff's claims of trade dress infringement and unfair competition arise out of the same set of facts and need not be addressed separately. *Tactica,* 154 F. Supp.2d at 597 (no material difference in the law governing Section 43(a) of the Lanham Act and unfair competition).

9

"first, that the trademark or trade dress is valid and entitled to protection, and second, that defendant's use of the trademark or trade dress is likely to cause consumer confusion as to the origin, affiliation or association, or endorsement of defendant's goods or services." *Barefoot Contessa*, 2015 WL 845711, at *3. To be entitled to protection, Plaintiff must also establish that the "unregistered trade dress is 'not functional.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001); *see also Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29 (2001) ("[T]rade dress protection may not be claimed for product features that are functional."); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992) ("[E]ligibility for protection under § 43(a) [of the Lanham Act] depends on nonfunctionality."). While Defendants do not concede that the dinnerware pattern is entitled to trade dress protection, much of the focus of the parties has been on which party ***owns*** the trade dress, if it can be considered trade dress at all.     1.

> 1. *Ownership Of the Trade Dress*

The facts of this case do not fit squarely into any of the indicia of ownership, particularly since the manufacturer of the product, Royal Porcelain, is not a party to the action. However, however, taken as a whole, Plaintiff has satisfied its burden of demonstrating sufficiently serious questions going to the merits of Plaintiff's claim.

In general, when a dispute arises between a manufacturer of a product and a distributor of a product, a court fist looks for an agreement between the parties regarding ownership of the mark. *Barefoot Contessa*, 2015 WL 845711, at *3. Where no agreement is present, there is a presumption that the manufacturer owns the mark; however, that presumption is rebuttable. *See Software AG, Inc. v. Consist Software Solutions, Inc.*, No. 08 Civ. 389, 2008 WL 563449, at *17 (S.D.N.Y. Feb. 21, 2008) , ("Absent a clear manifestation of intent by a supplier [or

manufacturer] to transfer ownership of a trademark to a distributor, the supplier [or manufacturer] remains the rightful owner" of a trademark registration), *aff'd*, 323 F. App'x 11 (2d Cir. 2009); *Tactica Int'l, Inc. v. Atlantic Horizon Int'l, Inc.*, 154 F. Supp. 2d 586, 600 (S.D.N.Y. 2001). That presumption is rebutted where there is evidence that when the "goods pass through the distributors hands," the distributor gives the goods the benefit of its reputation and standing in the industry. *Tactica*, 154 F. Supp. 2d at 600; *see also Tecnimed SRL v. Kidz-Med, Inc*., 763 F. Supp. 2d 395, 403 (S.D.N.Y. 2011). Plaintiff here has presented evidence that it has marketed, advertised and warrantied the BOTTICELLI and NEXUS dinnerware. Plaintiff has attended trade shows displaying these items, won awards from the industry for these patterns, and made frequent presentations to its clients featuring the products, Compl. ¶¶ 25, 33, all of which "give the goods the benefit of its reputation and standing in the industry." Thus, Plaintiff has alleged enough to rebut the presumption that Royal Porcelain owns the trade dress.

There are five factors to consider determining trade dress superior ownership as between a manufacturer and distributor. First, and the most hotly contested here is "which party invented and first affixed the mark onto the product." *Tactica*, 154 F. Supp.2d at 600  The creation of the design of the trade dress is not the proper inquiry, however – the question is who first used it commercially and acquired superior rights to it.[2] *See Frederick v. Carson,* No. 99 C 7838, 1999 WL 1249342, at *2 (N.D. Ill. Dec. 10, 1999); *ITC Ltd. v. Punchgini, Inc*., 482 F.3d 135, 147 (2d Cir. 2007) ("[S]o long as a person is the first to use a particular mark to identify his goods or

---

[2] The Court recognizes that Steelite, through is acquisition of Tablewerks, holds the patent to the design. However, the inquiry does not end there. *See Lon Tai Shing Co., LTD. v. Koch & Lowy,* No. 90 Civ. 4464, 1990 U.S. Dist. LEXIS 19123, at * 113 (S.D.N.Y. Dec. 14, 1990).

11

services in a given market, and so long as that owner continues to make use of the mark, he is entitled to prevent others from using the mark to describe their own goods in that market" (internal quotation marks omitted)). While Tablewerks, now Steelite, may hold the patent rights to the dinnerware design, there is no evidence presented that it has ever used the mark in commerce. At all times from the creation of the design to the present, Oneida has been the party which has sold the dinnerware to consumers and the foodservices industry. Thus, this factor weighs in favor of Oneida.

Next the Court must consider "which parties name appeared with the trademark" or trade dress in this case. *Haggar Int'l Corp. v. United Co. for Food Industry Corp.*, 906 F. Supp. 2d 96, 112 (S.D.N.Y. 2012). Advertisements may be used to show which parties name appeared with the trade dress. *Haggar*, 906 F. Supp. 2d at 119. Here the Royal Porcelain stamp appeared on the bottom of the product. However, the Oneida name appears with the pictures of the product in advertisements. Compl., Ex. 2, 3; Gebhardt Decl., Ex. 4, 5; Byron Decl., Ex. 1, 2.

Third, the Court must consider which party maintained the quality and uniformity of the product. Defendants have provided evidence that in the dinnerware industry generally, customers look to the manufacturer when assessing the quality of the goods, *see* Declaration of Allan Keck in Opposition to Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Keck Decl." ) [DE 26], ¶¶ 4-6, and that "Royal Porcelain's involvement as the manufacturer of these products is the primary driver of purchasing decisions." Declaration of Paul Kuzina in Opposition to Temporary Restraining Order, Preliminary Injunction, and Expedited Discovery Order ("Kuzina Decl." ) [DE 27], ¶ 17. While these statements may provide support for assertions regarding the quality of the product, they do not

12

shed light on which party maintained the quality or uniformity of the product.

Fourth, the Court must consider "with which party the public identified the product and to whom purchasers made complaints." *Barefoot Contessa*, at *12. Neither party has provided anything more than conclusory allegations regarding consumer complaints. For purposes of the issuance of a temporary restraining order, the Court gives greater weight to Plaintiff's conclusion that customers would voice complaints to Oneida, rather than to Royal Porcelain in Thailand. Neither party has argued that Tablewerks received customer complaints.

Finally, "a court may look at which party possesses the goodwill associated with the product, or which party the public believes stands behind the product." *Tactica*, 154 F. Supp.2d at 600. Some courts consider which party paid for advertising and promoting the product as indicia of goodwill. *Haggar*, 906 F. Supp.2d at 113; *see also Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, No. 05 C 5488, 2007 WL 2388794, at *3 (N.D. Ill. Aug. 17, 2007) (considering "which party paid for advertising and promotion of the trademarked product," "which party possesses the goodwill associated with the product, or which party the public believes stands behind the product"). Here, based upon the limited evidence presented, it appears that until the NAFEM trade show in February 2017, the only party who had advertised or promoted the BOTTICELLI or NEXUS patterns was Oneida. Thus, this factor weighs in favor of Oneida.

Plaintiff has presented evidence sufficient to raise serious questions going to the ownership of the trade dress of the BOTTICELLI and NEXUS dinnerware patterns.

13

### *2.     Secondary Meaning*

Having established serious questions going to the merits on the preliminary question of ownership, Plaintiff must also demonstrate that the design of the BOTTICELLI and NEXUS dinnerware patterns is valid trade dress and worthy of protection. Here too, Plaintiff has met that burden at this stage of the litigation.[3]

"An identifying, unregistered mark is capable of protection if it is either (1) inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Tactic*a, 154 F.Supp. 2d at 599. An unregistered mark, or trade dress, includes "the design and appearance of the product as well as that of the container." *Jeffrey Milstein, Inc. v. Greger*, 58 F.3d 27, 31 (2d Cir. 1995). Where the claim of trade dress is based on the product design, the plaintiff "may prove distinctiveness by showing . . . that 'in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself' (what is known as 'acquired distinctiveness' or 'secondary meaning')." *Yurman Design*, 262 F.3d at 115 (quoting *Wal-Mart Stores v. Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000)).

"Under the rubric of inherent distinctiveness, the focus of the inquiry is whether or not the trade dress of a product serves primarily as an indication of origin, such that consumers will readily rely on it to distinguish the product from those of competing manufacturers*." Forschner Grp., Inc. v. Arrow Trading Co.*, 124 F.3d 402, 407-08 (2d Cir. 1997). "Association of origin reflects the goodwill a manufacturer has built up in its product such that prospective consumers associate this product feature with the producer rather than with the product itself." *Forschner*

---

[3]  Because Steelite seeks to sell the exact dinnerware, produced by the same manufacturer, there can be no doubt that consumer confusion will follow. As such, Plaintiff has demonstrated a likelihood of success on the merits with respect to that element of its claim.

*Grp.*, 124 F.3d at 408.

Courts consider the following six factors when evaluating whether trade dress has acquired secondary meaning: "(1) advertising expenditures, (2) consumer studies linking the dress to the source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the dress, and (6) length and exclusivity of the [dress]'s use." *L. & J.G. Stickley, Inc. v. Canal Dover Furniture Co.*, 79 F.3d 258, 263 (2d Cir. 1996) (quotations omitted). However, "no single factor is determinative, and every element need not be proved[.]" *Id.* (quotations omitted).

Based upon the evidence presented at this early stage of the litigation, this factor tips in favor of Plaintiff's claim of secondary meaning. At this point, no consumer studies have been conducted, nor has any evidence been presented regarding attempts to plagiarize the pattern. Oneida has presented evidence of advertising expenditure (Byron Decl., ¶¶ 6-7) (Gebhardht Decl., Ex. 4), unsolicited media coverage (Gebhardt Decl., ¶ 18), sales success (Byron Decl., ¶¶ 10-11), and length and exclusivity of use (Byron Decl., ¶ 6). Defendants attempt to contradict this evidence through the testimony of a single distributor of dinnerware who states that he associates the design of the product with Royal Porcelain. Kuzina Decl., ¶ 17). This is not enough to overcome the weight of the evidence in Plaintiff's favor.

### 3. *Balance of the Hardships*

Finally, Plaintiff Oneida has demonstrated that the balance of the hardships tips in its favor. Plaintiff has been the exclusive distributor of the BOTTICELLI pattern for the past 15 years and the NEXUS pattern for the past 8 years. Compl. ¶¶ 13, 21, 28; Pl.'s Mem. at 7, 8. Defendants, on the other hand, have never sold this line of dinnerware directly to the consumer

and, indeed, Steelite only recently acquired its interest in Tablewerks.  Compl. ¶¶ 14, 17; Byron Decl., ¶ 16.  Among other things, Steelite's representation to Oneida customers that dinnerware products sold by Oneida under the SANT' ANDREA® brand "soon would only be available through Steelite going forward and that Oneida would not be able to provide such products once its inventory runs out," Byron Decl., ¶ 16, directly impacts Oneida's goodwill.  Oneida faces a considerable loss of goodwill from its inability to fulfill outstanding orders and the uncertainty created by the actions of Defendants at recent trade shows.  Byron Decl., ¶¶ 17-22.  The Court also takes note of an Oneida customer's email stating that he understood Oneida would no longer be selling SANT' ANDREA® products because Steelite had purchased Tablewerks.  Del-Cid Decl., ¶ 5 and Ex. 1.  Another significant customer advised that "We've been advised by Steelite that any future production orders for Botticelli must be issued to them."  Byron Decl., ¶ 17 and Ex. 3.  Moreover, on January 5, 2017, one of Oneida's key customers confirmed that Steelite told them Steelite acquired the rights to the designs and distribution of Royal Porcelain products. *Id.*, ¶ 18.

Moreover, any harm Defendants face is a result of their own actions.  *See Barefoot Contessa*, 2015 WL 845711, at *8.  Defendant Steelite took a risk in acquiring Tablewerks and attempting to cut Oneida out of the process and sell goods directly to consumers on their own.  This Report and Recommendation "merely pauses existing production and shipping of infringing products—thereby restoring the parties to the status quo that existed before Defendants began production of the allegedly infringing goods—pending the preliminary injunction hearing" on April 10, 2017.  *Id.*, 2015 WL 845711, at *7.

Because I find that Plaintiff has demonstrated irreparable harm along with sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Oneida's favor with respect its Lanham Act claim for trade dress infringement, I have not considered Plaintiff's remaining claims for purposes of the issuance of this temporary restraining order.

### IV.    CONCLUSION

Based on the foregoing analysis, I respectfully recommend to Judge Spatt that Plaintiff's motion for a temporary restraining order pending resolution of Plaintiff's motion for a Preliminary Injunction, scheduled for April 10, 2017 be GRANTED.

### V.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Arthur D. Spatt, and to the undersigned's Chambers as well. Any requests for an extension of time for filing objections must be directed to Judge Spatt prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
       March 14, 2017

/s/ A. Kathleen Tomlinson

A. KATHLEEN TOMLINSON
U.S. Magistrate Judge