**FILED**
**CLERK**

12:29 pm, Dec 15, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
THE ONEIDA GROUP INC.,

                        Plaintiff,

                    - against -

STEELITE INTERNATIONAL U.S.A. INC.,
TABLEWERKS INC., RICHARD ERWIN, STEVEN
LEFKOWITZ and ANTHONY DELOSREYES,

                       Defendants.

-------------------------------------------------------------------------x

**MEMORANDUM OF**
**DECISION AND ORDER**
17-cv-0957 (ADS)(AKT)

**APPEARANCES:**
**Milbank Tweed Hadley & McCloy, LLP**
*Attorneys for the Plaintiff*
28 Liberty Street
New York, NY  10005
        By:    Christopher J. Gaspar, Esq.,
                Mark C. Scarsi, Esq.,
                Ashlee Lin, Esq.,
                Kristin L. Yohannan, Esq.,
                Ryan N. Hagglund, Esq.,
                Nathaniel T. Browand, Esq., of Counsel


**Gordon & Rees LLP**
*Attorneys for the Defendants Steelite International U.S.A., Inc., Steven Lefkowitz, and Anthony DeLosReyes*
1300 I Street, NW
Washington, DC  20005
        By:   Howard Shipley, Esq.
              John G. Ebken, Esq.,
              Thomas L. Allen, Esq.,
              Paul Eastgate, Esq.,
              Peter G. Siachos, Esq., of Counsel


**Moses & Singer**
*Attorneys for the Defendants Tablewerks, Inc., and Richard Erwin*
405 Lexington Avenue
New York, NY 10174
        By:   David M. Rabinowitz, Esq.,
              Shari Ann Alexander, Esq., Of Counsel

**SPATT, District Judge:**

This action centers on whether certain dishes obtained trade dress protections under the Lanham Act or New York State law, and whether two parties ever entered into an exclusive distribution contract for those dishes.

The Plaintiff Oneida Group, Inc. (the "Plaintiff" or "Oneida") brought this action against the Defendants Steelite International U.S.A. Inc. ("Steelite"), Tablewerks Inc. ("Tablewerks"), Richard Erwin ("Erwin"), Steven Lefkowitz ("Lefkowitz"), and Anthony DeLosReyes ("DeLosReyes") (collectively, the "Defendants"). Oneida seeks damages and injunctive relief, alleging trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a) and New York common law; unfair competition under New York common law; trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; New York state common law pertaining to misappropriation of trade secrets; Ohio state laws pertaining to misappropriation of trade secrets, Ohio Rev. Code § 1333.61 *et seq.*; breach of contract; and tortious interference with business relations.

Presently before the Court are four motions: a motion to dismiss the Plaintiff's unfair competition and misappropriation of trade secrets claims pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) by Steelite, Lefkowitz, and DeLosReyes (the "Steelite Defendants"); a motion to dismiss the Plaintiff's tortious interference with business relations claims pursuant to Rule 12(b)(6) by Tablewerks and Erwin (the "Tablewerks Defendants"); a motion to intervene as a plaintiff by Steelite Distribution, LLC ("Steelite Distribution") pursuant to Rule 24; and a motion by the Plaintiff to amend the complaint pursuant to Rule 15 to add Steelite Distribution as a defendant, and to add several claims.

For the following reasons, the Steelite Defendants' motion to dismiss is denied; the Tablewerks Defendants' motion to dismiss is granted; Steelite Distribution's motion to intervene is granted; and Oneida's motion to amend the complaint is granted in part and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The following facts are drawn from the Plaintiff's proposed amended complaint ((ECF No. 100-2) the "PAC"). *See, e.g., MB v. Islip Sch. Dist.*, No. 14-cv-4670, 2015 WL 3756875, at *4 (E.D.N.Y. June 16, 2015) (stating that when a party files a motion to amend while a motion to dismiss is pending, the Court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint." (quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* No. 14 -cv -1082, 2014 WL 6390299, at *1 (E.D.N.Y. Nov. 17, 2014) (internal quotation marks omitted)).

As not all of the Plaintiff's claims are challenged by the Defendants, the Court will not go through a detailed recitation of all of the allegations or facts contained in the complaint. Instead, the Court will review the relevant facts.

Oneida designs and sells dinnerware. For more than twenty years, Oneida sourced many of its premier dinnerware products from Royal Porcelain Public Co., Ltd. ("Royal Porcelain"), a manufacturer located in Thailand. Oneida purchased the Royal Porcelain products through Tablewerks, which is purportedly the exclusive North American distributor of Royal Porcelain. Oneida alleges that it had the exclusive right to sell Royal Porcelain products in North America; and that Royal Porcelain and Tablewerks agreed not to supply any competitors with Royal Porcelain designs sold by Oneida.

On December 12, 2016, Steelite apparently acquired substantially all of the assets and rights of Tablewerks. On December 13, 2016, John Miles ("Miles"), the Chief Executive Officer ("CEO") and President of Steelite, sent a letter to Oneida advising it of this acquisition. In the letter, Steelite advised Oneida that Steelite would self-distribute all products produced by Royal Porcelain. Steelite stated that it had been advised that there was no contractual agreement between Oneida and either Tablewerks or Royal Porcelain. Steelite offered to make several accommodations to Oneida: fulfilling all of Oneida's existing purchase orders for Royal Porcelain products; allowing Oneida to sell its current inventory of Royal Porcelain products; and respecting Oneida's intellectual property—namely, Oneida's registered product names.

Oneida alleges that Steelite refused to respect Oneida's intellectual property, and that the letter was incorrect in stating that there was no contractual relationship between Oneida and Tablewerks or Royal Porcelain.

Steelite and Tablewerks are now selling dinnerware designs that were previously sold under Oneida's Sant' Andrea line, and Oneida claims that it has trade dress protections in those designs. Steelite and Tablewerks have told Oneida's customers that Oneida will not be able to provide the Sant' Andrea dinnerware, and that such products will only be available through Steelite. Furthermore, Steelite and Tablewerks have represented to customers that Steelite has acquired the designs and the distribution rights of Royal Porcelain products. Oneida further alleges that, upon information and belief, the Defendants have used Oneida's trademarks in their promotional and sales media.

In January 2017, representatives from Oneida and Steelite engaged in mediation. As a result of the mediation, the parties entered into a standstill agreement. However, forty-eight hours

after the mediation, Steelite purportedly displayed Royal Porcelain products at a trade show that had been exclusively sold by Oneida.

## 1. Alleged Trade Secrets and Intellectual Property

The complaint further alleges that Oneida has developed valuable proprietary and confidential information that constitute trade secrets. The purported trade secrets concern "valuable marketing, sales and strategy information . . . ." (PAC ¶ 39). These include but are not limited to:

> (1) Oneida's "where to play and how to win" business strategy that includes information about customer segmentation and product category particularized by sub-category and sub-channels, (2) Oneida's go-to market strategy for interacting with customers based on proprietary developed customer segmentation and end-user analysis, (3) Oneida's product margins, costs, rebate programs, other trade spend activities, and proposed changes in those rebate programs and trade spend activities, (4) Oneida's costs, margins, and expected pricing of customer specific designs, and (5) Oneida's customer sales forecasting and customer-specific account strategy.

(*Id.*).

To protect these purported trade secrets, Oneida requires employees and consultants to sign non-disclosure agreements; maintains a handbook that prohibits unauthorized disclosure of confidential business information; and has a records retention policy in place that requires securing and properly disposing of all documents which contain trade secrets.

Oneida alleges that Lefkowitz and DeLosReyes, who both left Oneida to work for Steelite, violated those agreements by divulging Oneida's trade secrets to Steelite.

When Lefkowitz met with an Oneida employee to return all Oneida property on January 4, 2017, Lefkowitz refused to give the employee access to his computer. Lefkowitz would only provide copies of certain files to the employee. During the meeting with the Oneida employee, Lefkowitz was able to find Oneida materials on his computer despite his claims that he had deleted

all Oneida materials.  The complaint does not state what files Lefkowitz had on his computer that would be considered trade secrets.

As to DeLosReyes, Oneida alleges that "on information and belief, on January 3, 2017, he connected an external memory drive to his Oneida laptop computer and copied files from his Oneida laptop computer to the external memory drive."  (PAC ¶ 68).  The complaint does not state what files DeLosReyes had on his laptop that would be considered trade secrets.

Oneida claims that because Steelite has been able to offer Oneida's claimed designs to Oneida's own customers, Lefkowitz and DeLosReyes must have disclosed some trade secrets.  The amended complaint also states that a Steelite employee possessed a confidential Oneida video, and Oneida confidential information.  While it states that the video and the information were contained in an email, the amended complaint does not identify what the information was, or what was on the video.

The complaint further alleges, based on "information and belief," that "each of the Defendants knowingly acquired, disclosed, and/or used Oneida trade secrets and confidential information to injure Oneida[,] . . . [and] threatens to misappropriate Oneida's trade secrets and confidential information . . . ."  (PAC ¶¶ 96–97).

The amended complaint also alleges that the Defendants are using Oneida's registered trademarks to promote and sell the Defendants' products.

Oneida further states that Steelite has advertised that "Belisa was the first pattern in the market to feature an ergonomic set of ridges on the underside to facilitate easy handling, making its design unrivaled in the hospitality industry."  (PAC ¶ 236).  Oneida avers that this is false and misleads consumers because Oneida's Botticelli dinnerware, which is now being sold by Steelite under the name Belisa, was the first pattern to feature that design.

Finally, Oneida alleges that Steelite Distribution's claimed patents and copyrights are ineligible for intellectual property protection. Specifically, Oneida states that Patent D481,261 (the "'261 Patent"), which is a division of Patent D463,955 (the "'955 Patent"), describes features that lack the novelty, ornamentality, and nonobviousness required for patentability.

As to the copyrights, Oneida states that the Defendants' copyright application reference no. #1-4108448151 was denied by the Copyright Office on April 5, 2017, several days before this Court conducted a hearing to determine whether to grant Oneida's motion for a preliminary injunction. During that hearing, the Defendants introduced evidence that the copyright application was pending, and relied on the copyright application in support of their opposition to Oneida's motion for a preliminary injunction. The Defendants never informed Oneida or the Court during or after the hearing that their copyright application had been denied.

Oneida does not allege that the same misrepresentation occurred in regards to copyright application reference number #1-4734329381, but nevertheless claims that the subject matter of the application is not copyrightable material.

**B. The Relevant Procedural History**

On February 20, 2017, Oneida filed its initial complaint. Oneida sought injunctive and declaratory relief, along with damages. As stated above, Oneida brought claims for trade dress infringement under the Lanham Act and New York common law; unfair competition under New York common law; misappropriation of trade secrets in violation of the DTSA, New York common law and the Ohio Rev. Code § 1333.61 *et seq*.; breach of contract; and tortious interference with business relations.

On February 22, 2017, the Court signed an *ex parte* order directing the Defendants to show cause why Oneida's motion for a temporary restraining order, preliminary injunction, and

expedited discovery should not be granted. The Court referred Oneida's motion to Magistrate Judge A. Kathleen Tomlinson.

On February 28, 2017, Judge Tomlinson issued a report and recommendation (the "R&R") recommending that the Court issue a temporary restraining order pending resolution of Oneida's motion for a preliminary injunction. Judge Tomlinson followed up her initial R&R with a full written opinion on March 14, 2017. Following that ruling, the Court held a five day hearing from April 10, 2017 through April 14, 2017 to resolve Oneida's motion for a preliminary injunction.

On May 10, 2017, the Court issued a memorandum of decision and order denying Oneida's motion for a preliminary injunction, and granting Oneida's motion for expedited discovery.

On March 31, 2017, while the Plaintiff's motion for a preliminary injunction was being entertained by the Court, two sets of Defendants filed two separate motions to dismiss several counts contained in the initial complaint pursuant to Rule 12(b)(6). The motion to dismiss filed by the Steelite Defendants seeks to dismiss the Plaintiff's misappropriation of trade secrets and unfair competition claims against them. The other motion to dismiss, filed by the Tablewerks Defendants, seeks a dismissal of the Plaintiff's tortious interference with business relations claims against them.

On June 14, 2017, Steelite Distribution filed a motion to intervene as a plaintiff pursuant to Rule 24. In its proposed complaint, Steelite Distribution brings claims for patent infringement; copyright infringement; trade dress infringement in violation of the Lanham Act; false designation of origin in violation of the Lanham Act; common law trade dress infringement; unfair competition, commercial disparagement; interference with contractual relations; breach of contract; and declaratory judgment. Oneida does not oppose the motion. (ECF No. 94 ("[Oneida] (i) does not object to Steelite Distribution, LLC's intervention . . . but (ii) does not waive any right

to challenge the proposed Complaint . . . [,] including to challenge both the sufficiency of the claims and any purported Rule 11 basis for them.")).

On August 7, 2017, Oneida filed a motion to amend its complaint pursuant to Rule 15 to add Steelite Distribution as a defendant; to add certain factual allegations; and to add claims for breach of implied contract; promissory estoppel; false endorsement and false designation of origin under 15 U.S.C. § 1125(a)(1)(A); false advertising; and for declaratory judgments regarding alleged invalidity of patents and copyright ineligibility.  Only Steelite Distribution opposes Oneida's motion to amend.  Oneida's proposed amended complaint includes causes of action against Steelite Distribution for unfair competition; tortious interference with business relations; false endorsement and false designation of origin; false advertising; and declaratory judgment.

## II.  DISCUSSION

### A.  As to the Motions to Dismiss

#### 1.  The Legal Standard

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929

(2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

### 2. As to the Plaintiff's Claims

#### a. Misappropriation of Trade Secrets

##### i. The Relevant Law

Oneida brings claims for misappropriation of trade secrets under federal, New York State, and Ohio State law. The requirements for showing a misappropriation of a trade secret are similar under state and federal law.

"[U]nder New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir. 1999). New York courts have looked to the following factors to determine whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3)

the extent of measures taken by the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Ashland Mgmt Inc. v. Janien,* 82 N.Y.2d 395, 407, 624 N.E.2d 1007, 1012–13, 604 N.Y.S.2d 912, 918 (N.Y. 1993) (quoting RESTATEMENT OF TORTS § 757 cmt. b)).

A trade secret, however, "is not simply information as to single or ephemeral events in the conduct of the business; rather, it is a process or device for continuous use in the operation of the business." *Sit–Up Ltd. v. IAC/InterActiveCorp.,* No. 05–CV–9292, 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.,* 118 F.3d 955, 968 (2d Cir. 1997)). "The most important consideration remains whether the information was secret." *Payment Alliance Int'l, Inc. v. Ferreira,* 530 F. Supp. 2d 477, 481 (S.D.N.Y. 2007) (quoting *Lehman v. Dow Jones & Co.,* 783 F.2d 285, 298 (2d Cir. 1986)) (internal quotation marks omitted). Whether the information was secret is "generally a question of fact." *Ashland Mgmt.,* 604 N.Y.S.2d 912, 624 N.E.2d at 1013 (internal citations omitted).

To prevail on a claim for misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act, a plaintiff must show "(1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; [and] (3) the unauthorized use of a trade secret." *Heartland Home Fin., Inc. v. Allied Home Mortgage Capital Corp.,* 258 F. App'x 860, 861 (6th Cir. 2008) (citing *Hoover Transp. Servs. v. Frye,* 77 F. App'x. 776, 782 (6th Cir. 2003) (per curiam)).

Similarly, under the DTSA, a party must show "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under

circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Free Country Ltd v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (quoting 18 U.S.C. § 1839(3) (A)–(B)).

The DTSA defines a "trade secret," as, *inter alia*, any business information that "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value . . . from not being generally known . . . [or] readily ascertainable . . . [to] another person who can obtain economic value from the disclosure or use of the information[.]" 18 U.S.C. 1839(3)(A)–(B).

### ii. Application to the Plaintiff's Claims

The Steelite Defendants argue that Oneida has failed to plead sufficient facts to plausibly state claims for misappropriation of trade secrets. Specifically, they contend that Oneida does not specify what information at issue is a trade secret, or how the Steelite Defendants misappropriated it. In opposition, Oneida states that it has sufficiently plead its claims for misappropriation of trade secrets. While the Court believes that it is a close issue, the Court finds that Oneida has alleged sufficient facts to plausibly state a claim upon which relief can be granted.

The complaint identifies five purported trade secrets: Oneida's business strategy that includes information about customer segmentation and product category; Oneida's market strategy for customers; Oneida's product margins, costs, rebate programs, and trade spend activities; Oneida's expected pricing of customer-specific designs; and Oneida's customer sales forecasting and customer-specific account strategies.

Courts have found that these types of information can constitute trade secrets. *See Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 804 (S.D.N.Y. 2008) ("[S]trategic information regarding price, distribution, and marketing; brand strategies; and confidential business

relationships, have been found to constitute trade secrets." (citing *Estee Lauder Cos. v. Batra,* 430 F. Supp. 2d 158, 175–76 (S.D.N.Y. 2006); *A & G Healthplans, Inc. v. Nat. Network Servs., Inc.,* No. 99 CV 12153(GBD), 2003 WL 1212933, *3 (S.D.N.Y. Mar. 14, 2003)); *see also N. Atl. Instruments*, 188 F.3d at 46 (stating that a customer list "developed by a business through substantial effort and kept in confidence may be treated as a trade secret . . . provided the information it contains is not otherwise readily ascertainable."); *Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 302 (E.D.N.Y. 2012) ("[T]he customer list, including the rates charged to and correspondence with those customers, are trade secrets."); *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 314 (S.D.N.Y. 1999) ("In some contexts, courts have found that particularized marketing plans, costing and price information may constitute trade secrets." (collecting cases)). Therefore, the information that Oneida claims it sought to protect may constitute trade secrets.

Furthermore, Oneida has sufficiently alleged that it took various steps to keep this information secret. Oneida asks third parties to "execute nondisclosure and/or confidentiality agreements not to disclose to any unauthorized person or entity, any secret, confidential, or private information connected with Oneida's business." (PAC ¶ 41). Also, the Global Employee Handbook and Policy Guide asks the same of Oneida's employees, (*id.*). In any event, whether trade information is secret is a question of fact. *See, e.g., A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 89 (2d Cir. 1991) (holding that the question of whether information is secret is "generally a question of fact"); *Medtech Prods.*, 596 F. Supp. 2d at 805 ("[T]he secrecy of particular information is an issue of fact and cannot be decided at the motion to dismiss stage.").

While the complaint is not clear as to which of the trade secrets Lefkowitz and DeLosReyes were privy to, it does state that they were both among the select few who had access to some or all of the claimed trade secrets. Although it is a close question, the Court finds that this is sufficient

at this stage, because Oneida identified the trade secrets with specificity. Therefore, Oneida sufficiently alleged that Lefkowitz and DeLosReyes acquired trade secrets as a result of a confidential relationship with Oneida.

The "use" of the trade secret is an even closer question. Oneida does not identify what, if any, specific trade secrets were taken by Lefkowitz and DeLosReyes when they left. The complaint states that Lefkowitz would not turn his computer over to Oneida, and that it appeared that Lefkowitz still had access to Oneida files upon his departure. As to DeLosReyes, Oneida alleges that he copied some unknown files onto an external hard drive. Oneida seeks to connect the taking of information by its former employees to Steelite in three ways: first, again reading the complaint liberally, it states that by offering the dishes previously sold by Oneida, Steelite must be using Oneida's trade secrets regarding pricing, margins, and strategy; second, Oneida offers two examples in its amended complaint where Steelite employees somehow possessed confidential Oneida information; and finally, Oneida alleges that the Steelite Defendants threaten to misappropriate and/or will inevitably disclose the trade secrets.

The Court finds that Oneida has met its burden, albeit barely, at this stage. Within two months of acquiring Tablewerks' rights, Steelite offered the dishes previously sold by Oneida at a trade show. Oneida alleges that Steelite is attempting to sell the dishes to Oneida's customers. As Oneida has sufficiently alleged that its marketing strategies, margins, and customer-specific strategies are trade secrets, the Court finds that it is *plausible* that Steelite has used Oneida's confidential information obtained by DeLosReyes and Lefkowitz to bring the dishes to market and offer the dishes to the same customers. *See, e.g., Medtech Prods., LLC*, 596 F. Supp. 2d at 790 ("Medtech alleges that Kaplan and Duane, who had extensive knowledge of Medtech's business and the production process for the NightGuard™, disclosed Medtech's trade secrets in violation

14

of confidentiality agreements in place, and that, shortly thereafter, DenTek, a company with no experience in the dental protector market, was able to rush a dental protector to the market, without going through any development process. These allegations make Medtech's claim for trade secret misappropriation *plausible*."); *see also Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F. Supp. 119, 125 (E.D.N.Y. 1997) (finding that disclosure was likely where the defendant "provide[d] *an identical product* to its customers as previously provided by [the plaintiff]. In sum, [the defendant] represented to the airlines that their past expertise would be used in formulating competitive bids and providing an identical product").

Furthermore, under state law and the DTSA, the allegation of a threat of misappropriation is sufficient. *See* 18 U.S.C. § 1836(b)(3)(A)(i)(I) ("[A] court may grant an injunction *to prevent any actual or threatened misappropriation* . . . provided the order does not prevent a person from entering into an employment relationship, and that conditions placed on [] employment [are] based on evidence of threatened misappropriation and not merely on the information the person knows . . . ." (emphasis added)); *Inflight Newspapers*, 990 F. Supp. at 125 (granting the plaintiff's motion for a preliminary injunction and stating that "the plaintiffs need not establish that the information was actually used, but need only show that the use and disclosure of an employer's protected confidential information is *likely* to occur."); *Avery Dennison Corp. v. Kitsonas*, 118 F. Supp. 2d 848, 854 (S.D. Ohio 2000) ("An injunction may be issued if there is 'actual or threatened' misappropriation of a trade secret[].").

While the two cases cited above dealt with motions for preliminary injunctions, the showing required for such motions is higher than one to overcome a motion to dismiss. (*Compare Salinger v. Colting*, 607 F.3d 68, 79–80 (2d Cir. 2010) ("[A] court may issue a preliminary injunction . . . only if the plaintiff has demonstrated either (a) a likelihood of success on the merits

or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor." (internal citations and quotation marks omitted)) *with Twombly*, 550 U.S. at 570 (stating that a plaintiff must merely establish that allegations in the complaint are sufficient to render claims plausible). As Oneida seeks injunctive relief to prevent a threatened misappropriation, the Court finds that the allegations of threatened misappropriation are also sufficient at this stage.

Therefore, Oneida has alleged sufficient facts for the Court to plausibly find that relief can be granted on its claims for misappropriation of trade secrets. Accordingly, the Steelite Defendants' motion to dismiss those claims is denied.

### b. Unfair Competition

#### i. Relevant Law

Under New York law, an unfair competition claim encompasses a broad range of unfair practices. *Am. Footwear Corp. v. Gen'l Footwear Co.,* 609 F.2d 655, 662 (2d Cir. 1979). Although the law of unfair competition is "a broad and flexible doctrine" that has been described as "a form of commercial immorality," its reach is not without limits. *Roy Export Co. Establishment v. Columbia Broadcasting Sys.,* 672 F.2d 1095, 1105 (2d Cir. 1982). "[T]he essence of an unfair competition claim is that the defendant has misappropriated the labors and expenditures of another and has done so in bad faith." *Coca–Cola North America v. Crawley Juice, Inc.,* Nos. 09 CV 3259(JG)(RML), 09 CV 3260(KAM)(RML), 09 CV 3279(ERK)(RML), 2011 WL 1882845, at *6 (E.D.N.Y. May 17, 2011) (internal quotation marks and citations omitted); *see also Luv n' Care, Ltd. v. Mayborn USA, Inc.,* 898 F. Supp. 2d 634, 643 (S.D.N.Y. 2012) (stating that "a plaintiff asserting an unfair competition claim under New York common law must also show that defendant acted in bad faith"); *Bongo Apparel, Inc. v. Iconix Brand Group, Inc.,* 18 Misc.3d 1108(A), 856

N.Y.S.2d 22, 2008 WL 41341 (N.Y. Sup. Ct. 2008) ("While there is no complete list of activities which constitute unfair competition under New York law, the essence of an unfair competition claim is that one may not act in bad faith to misappropriate the skill, expenditures, and labor of another.").

However, "[n]ot every act, even if taken in bad faith, constitutes unfair competition." *Comp. Assocs., Inc. v. Simple.com, Inc.*, 621 F. Supp. 2d 45, 53 (E.D.N.Y. 2009) (holding that a plaintiff must show more than commercial unfairness). "The tort is not all-encompassing . . . ; the New York Court of Appeals in rejecting the notion that unfair competition is equivalent to the amorphous term commercial unfairness has stated that misappropriation of another's commercial advantage is a cornerstone of the tort." *Id.* (internal citations and quotation marks omitted); *see also Nationwide CATV Auditing Servs., Inc. v. Cablevision Sys. Corp.,* No. 12–CV–3648 (SJF)(ETB), 2013 WL 1911434, at *10 (E.D.N.Y. May 7, 2013) (same). Notably, to act in "bad faith," one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Ins. Co.,* 30 A.D.3d 474, 820 N.Y.S.2d 275, 277 (2d Dep't 2006).

### ii. Application to the Plaintiff's Claims

Oneida's unfair competition claims are based on the allegations that form the basis of the misappropriation of trade secrets claims, as well as the alleged unauthorized use of Oneida's purported trade dress, marketing, and trademarks. For example, Oneida claims that Steelite refers to the Belisa pattern, which is a Steelite name, as the Botticelli pattern, which is an Oneida trademark.

The Court finds that Oneida's unfair competition claims survive for the same reasons that the Court found that Oneida's misappropriation of trade secrets were sufficient. Furthermore, Oneida's unfair competition claims are bolstered by the additional facts relating to Steelite's

alleged use of Oneida's trademarks and marketing materials. "The essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods," *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995), and Oneida's allegations, if true, demonstrate that Steelite is misappropriating Oneida's work and misleading the marketplace.

Therefore, Oneida's claims for unfair competition survive Rule 12(b)(6) scrutiny. Accordingly, the Steelite Defendants' motion to dismiss those claims is denied.

### c. Tortious Interference with Business Relations

#### i. The Relevant Law

"Tortious interference with a business relationship is sometimes called 'tortious interference with prospective economic advantage'; no matter the term used, the elements are the same." *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 196 (S.D.N.Y. 2011) (quoting *PPX Enters. v. Audiofidelity Enters.,* 818 F.2d 266, 269 (2d Cir. 1987), *abrogated on other grounds by Hannex Corp. v. GMI, Inc.,* 140 F.3d 194, 206 (2d Cir. 1998)).

The elements of tortious interference with a business relationship are "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 547 F.3d 115, 132 (2d Cir. 2008) (internal citation omitted).

"If the interference complained of 'is intended, at least in part, to advance one's own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct.'" *Huntington Dental & Med. Co. v. Minnesota Min. & Mfg. Co.*, No. 95 CIV. 10959 (JFK), 1998 WL 60954, at *4 (S.D.N.Y. Feb. 13, 1998) (quoting *PPX Enters.*, 818 F.2d at 269));

*see also Kahn v. Salomon Bros. Inc.,* 813 F. Supp. 191, 195 (E.D.N.Y. 1993) ("[W]here a defendant's conduct is intended even partially to advance its own interests, the misconduct must rise to the level of fraudulent or criminal acts.").

### ii. Application to the Facts

The parties focus their arguments on the third element listed above, and whether the requirements of Rule 8 or 9 apply to tortious interference claims. The Court need not address which Federal Rule of Civil Procedure applies to such claims because the Court finds that Oneida has failed to adequately plead the first element, and the claims must therefore be dismissed.

Oneida does not identify a single third-party with which it had business relationships. Although it makes general references to "customers," this is insufficient, and fatal to its tortious interference claims. *See In re Interest Rate Swaps Antitrust Litig.*, -- F. Supp. 3d --, No. 16-MC-2704 (PAE), 2017 WL 3209233, at *51 (S.D.N.Y. July 28, 2017) ("The JTSAC does not identify any customer with whose prospective business relations with Javelin and Tera the Dealer Defendants sought to interfere or the particular nature of the prospective business relations. Although the JTSAC—to the extent that it alleges a viable § 1 claim—adequately pleads the wrongful purpose of impairing *Javelin and Tera*'s trading platforms and hence generally harming *their* businesses, the JTSAC does not allege *any particular customer relationship* of those plaintiffs with which the Dealer Defendants' actions interfered." (internal citations omitted, emphasis added)); *Stephens v. Trump Org. LLC*, 205 F. Supp. 3d 305, 311 (E.D.N.Y. 2016) ("The failure to identify *a specific business relationship* with a third party is fatal." (emphasis added)); *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402 (S.D.N.Y. 2012) ("Plaintiff has not adequately alleged *specific* business relationships with which Defendant allegedly interfered.") (emphasis in original); *Bayer Schera Pharma AG v. Sandoz, Inc.*, No. 08 CIV.03710(PGG), 2010

WL 1222012, at *8 (S.D.N.Y. Mar. 29, 2010) (dismissing the plaintiff's tortious interference claim because it "ha[d] not identified *any specific business entity* with which it had business relationships" (emphasis added)); *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A., IBI, L.L.C.,* No. 02–CV–1363, 2003 WL 21203503, at *6 (S.D.N.Y. May 22, 2003) (noting that "[a] properly pleaded complaint . . . must allege relationships *with specific third parties* with which the respondent interfered" (emphasis added)); *Commercial Data Servers, Inc. v. Int'l Bus. Mach. Corp.*, 166 F. Supp. 2d 891, 898 (S.D.N.Y. 2001) ("Plaintiff must specify some particular, existing relationship through which plaintiff would have done business but for the allegedly tortuous behavior. A general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship does not state a claim."); *Four Finger Art Factory, Inc. v. Dinicola,* No. 99–CV–1259, 2000 WL 145466, at *7 (S.D.N.Y. Feb. 9, 2000) (dismissing tortious interference with business relations claim where "the complaint fail[ed] to identify any other relationships *with any other specific parties* with which the defendants interfered" (emphasis added)); *Envirosource, Inc. v. Horsehead Res. Dev. Co.,* No. 95–CV–5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (noting that "[a] general allegation of interference with customers without any sufficiently particular allegation of interference with a *specific contract or business relationship* will not withstand a motion to dismiss" (emphasis in original) (internal quotation marks omitted)).

Therefore, Oneida not alleged sufficient facts that plausibly suggest that the Defendants tortiously interfered with any business advantages.

However, because the Court considered *sua sponte* whether Oneida adequately plead the first element, and did not afford Oneida an opportunity to be heard on the issue, Oneida is afforded

thirty days to amend its complaint solely to address its stated shortcomings. Accordingly, Oneida's tortious interference claims are dismissed without prejudice with leave to replead.

## B. As to Steelite Distribution's Motion to Intervene

### 1. The Relevant Law

Rule 24 states that anyone may intervene as a matter of right who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2). Permissive intervention is warranted where an individual or corporation "has a claim or defense that shares with the main action a common question of law or fact." *Id.* at 24(b)(1)(B).

> In order to establish intervention as a matter of right, the following conditions must be met:
>
> (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties.

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (internal citations omitted).

Permissive intervention does not require such a showing, and "is discretionary with the trial court. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Citizens Against Casino Gambling in Erie Cty. v. Hogen*, 417 F. App'x 49, 50 (2d Cir. 2011) (quoting *H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,* 797 F.2d 85, 89 (2d Cir. 1986) (internal quotation marks omitted)). The Court may also consider "the nature and extent of the intervenors' interests, the degree to which those interests are adequately represented by other parties, and whether parties

seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Id.* (internal citations and quotation marks omitted).

### 2. Application to the Facts

Here, while the Court finds that Steelite Distribution is not entitled to intervene as a matter of right because Steelite currently adequately represents its interests, the Court grants Steelite Distribution's motion to permissively intervene.

Steelite Distribution's motion to intervene was timely. Its motion was made only four months after the complaint was filed, and about a month after Oneida's motion for expedited discovery was granted. Discovery had only just begun when the motion to intervene was filed. No party claims that it would be prejudiced by Steelite Distribution's intervention. *See, e.g., In re Holocaust Victim Assets Litig.,* 225 F.3d 191, 198 (2d Cir. 2000) ("A district court has broad discretion in assessing the timeliness of a motion to intervene, which defies precise definition. The court may consider, *inter alia,* the following factors: (1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention. Generally, the court's analysis must take into consideration the totality of the circumstances." (internal citations and quotation marks omitted).

Steelite Distribution has also asserted a significantly protectable and direct interest. *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prod., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984) ("In discussing interest in the context of intervention as of right, the Supreme Court has stated that the interest must be significantly protectable. Moreover, it is said that such an interest must be direct,

as opposed to remote or contingent. (internal citations and quotation marks omitted)).  Steelite

Distribution states that it possesses intellectual property rights in the dinnerware designs at issue,

and is the exclusive distributor of all products manufactured by Royal Porcelain.  This interest is

not remote or contingent, because Steelite Distribution's purported rights may be directly affected

by the outcome of this litigation.  That is, if the Court were to find that Oneida has trade dress

rights in the dinnerware, or that Oneida is entitled to sell the products manufactured by Royal

Porcelain, Steelite Distribution's rights would be affected.

As to the third and fourth requirements listed above, Steelite Distribution states that

"crucially, it is Steelite Distribution . . . which owns the rights to the tableware designs involved

in this litigation, and any claims regarding those rights cannot be properly adjudicated without

Steelite Distribution's involvement."  (Steelite Distribution's Mem. in Support of Mot. to Intervene

(ECF No. 89–1) at 2).  While the Court agrees that disposition of the matter without Steelite

Distribution's intervention may impair or impede its ability to protect its interests, the Court does

not believe that Steelite Distribution has made an adequate showing on the fourth element,

demonstration of inadequacy of representation.

The Second Circuit has stated that "[w]hile the burden to demonstrate inadequacy of

representation is generally speaking minimal, we have demanded a more rigorous showing of

inadequacy in cases where the putative intervenor and a named party have the same ultimate

objective." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001).  Here,

Steelite Distribution and Steelite have the same ultimate objectives: persuading the Court that

Oneida does not have any intellectual property rights in the Royal Porcelain manufactured

dinnerware; that Oneida does not have any contractual rights; that Steelite Distribution and Steelite

own any intellectual property rights associated with the dinnerware; and that neither Steelite Distribution nor Steelite wronged Oneida.

Furthermore, it appears that Steelite and Steelite Distribution have an identity of interest. *See Identity of Interests*, BLACK'S LAW DICTIONARY (10th ed. 2014) (stating that an identity of interests is "[a] relationship between two parties who are so close that suing one serves as notice to the other, so that the other may be joined in the suit"). Steelite Distribution represents that it is "an affiliate of Steelite []." (Steelite Distribution's Mem. in Support of Mot. to Intervene (ECF No. 89–1) at 2). "Where there is an identity of interest between a putative intervenor and a party, adequate representation is assured." *Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990).

A movant may rebut the presumption of adequate representation. Although the Second Circuit has declined to lay out "a hard-and-fast rule of what form of showing must be made to rebut a presumption of adequate representation when there is an identity of interest between the putative intervenor and an existing party to the action," *Butler, Fitzgerald & Potter*, 250 F.3d at 180, courts in the circuit have typically required a showing of collusion, adversity of interest, nonfeasance, or incompetence to overcome the presumption of adequacy of interest, *id.* (agreeing with lower courts that have required such showings). Steelite Distribution does not claim that any of those situations are present here. Therefore, the Court finds that Steelite Distribution is adequately represented by Steelite, who has an identity of interest with Steelite Distribution, and denies Steelite Distribution's motion to intervene as a matter of right on that basis.

However, in its discretion, the Court permits Steelite Distribution to permissively intervene. "Reversal of a denial of permissive intervention is only appropriate where the district court exceeds its broad discretion," *Washington Elec. Co-op., Inc.,* 922 F.2d at 98, and the

"principal consideration," *U.S. Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978), for a court is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights," FED. R. CIV. P. 24(b)(3).

While the Court denied Steelite Distribution's motion to intervene based on adequacy of representation, "'Rule 24(b) does not list inadequacy of representation as one of the considerations for the court' in exercising its discretion under Rule 24(b) and although a court may consider it, 'it is clearly a minor factor at most.'" *Allco Fin. Ltd. v. Etsy*, 300 F.R.D. 83, 88 (D. Conn. 2014) (quoting *United States v. Columbia Pictures Indus., Inc.,* 88 F.R.D. 186, 189 (S.D.N.Y. 1980) (further internal citations omitted)). Thus, while adequate representation may weigh against allowing permissive intervention, such intervention may still be appropriate if the intervenor will "assist in the just and equitable adjudication of any of the issues between the parties." *Id.* (quoting *H.L. Hayden Co. of N.Y.*, 797 F.2d at 89).

While many courts have denied permissive intervention where there was adequate representation, other courts have found permissive intervention warranted even where there was adequacy of representation. *See Coleman v. Cty. of Suffolk*, 174 F. Supp. 3d 747, 754 (E.D.N.Y. 2016) (granting permissive intervention to the Suffolk County Police Benevolent Association despite the fact that individual members interests were seemingly represented by Suffolk County), *aff'd*, 685 F. App'x 69 (2d Cir. 2017); *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09-CV-230, 2015 WL 4758255, at *6–7 (D. Vt. Aug. 11, 2015); *Allco Fin.*, 300 F.R.D. at 88; *First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, No. 3:12CV1096 (JBA), 2014 WL 12573387, at *6 (D. Conn. June 17, 2014); *see also Favors v. Cuomo*, 881 F. Supp. 2d 356, 374 (E.D.N.Y. 2012) (denying motion to intervene as of right due to adequate representation, but denying permissive

intervention due to *inter alia*, delay and prejudice); *United States v. L&M 93rd St. LLC*, No. 10 CIV. 7495 RMB, 2011 WL 1346994, at *4 (S.D.N.Y. Apr. 5, 2011) (same).

In the Court's view, Steelite Distribution will assist in the just and equitable adjudication of the issues because of its interest in the litigation, and especially because of its claimed intellectual property rights in the dinnerware designs.

Most importantly, Steelite Distribution's intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." *Citizens Against Casino Gambling in Erie Cty.*, 417 F. App'x at 50 (quoting *H.L. Hayden Co. of N.Y.*, 797 F.2d at 89). As stated above, the motion to intervene was timely made; and no parties claim that they will be prejudiced by Steelite Distribution's intervention. Indeed, as discussed below, Oneida seeks to add Steelite Distribution to the action as a defendant.

Accordingly, the Court denies Steelite Distribution's motion for intervention as a matter of right pursuant to Rule 24(a)(2), but grants Steelite Distribution's motion for permissive intervention pursuant to Rule 24(b)(1)(B).

## C. As to Oneida's Motion to Amend

### 1. The Legal Standard

FED. R. CIV. P. 15(a)(2) applies to motions to amend the pleadings once the time for amending a pleading as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12–CV–4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting

*Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits").

A court should deny leave to amend only "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502–03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137–38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

Proposed amendments are futile when they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).

### 2. **Application to the Facts**

As stated above, the motion to amend was only opposed by Steelite Distribution, who was not a party to the action when it filed its opposition. The Court agrees with Steelite Distribution that the claims asserted against it in the amended complaint must be brought as counterclaims.

The Court has granted Steelite Distribution's motion to intervene as a Plaintiff-Intervenor. Oneida cannot now go back in time and turn Steelite Distribution into a defendant when it failed to do so either in its initial complaint, or in an amended complaint before Steelite Distribution moved to intervene. Oneida's motion attempts to preempt Steelite Distribution's motion to intervene as plaintiff. All of Oneida's proposed claims against Steelite Distribution "arise[] out of the transaction or occurrence that is the subject matter of [Steelite Distribution]'s claim . . . ." FED. R. CIV. P. 13(a)(1)(A) (governing the procedures for compulsory counterclaims). Counsel for Oneida appeared to recognize this when it emailed counsel for Steelite International on March 31, 2017. In the email counsel said that Oneida's position as to Steelite Distribution's motion to intervene was as follows:

> Plaintiff The Oneida Group Inc. has been informed of this Motion to Intervene and does not oppose Steelite Distribution's intervention in the above-captioned litigation, *although Plaintiff reserves all rights to oppose Steelite Distribution's claims in this case and to bring counterclaims against Steelite Distribution.* By not opposing this motion, Plaintiff does not agree to or admit any statement in Steelite Distribution's Memorandum of Law in support of this motion.

(Pl.'s Ex. 1 to Response to Mot. to Intervene (ECF No. 94-1) (emphasis added)).

While not directly applicable here, the first-filed rule is instructive. The "first-filed" rule stands for the general proposition "where there are two competing lawsuits, the first suit should have priority . . . ." *Wyler–Wittenberg v. MetLife Home Loans, Inc.,* 899 F. Supp. 2d 235, 243 (E.D.N.Y. 2012) (quoting *First City Nat. Bank and Trust Co. v. Simmons,* 878 F.2d 76, 79 (2d Cir. 1989) (internal citations omitted)). Treating the respective parties' motions as complaints— which is logical, since both motions seek to file new complaints—Steelite Distribution filed its complaint first. Therefore, Steelite Distribution gets priority, and any claims asserted by Oneida against it must be brought as counterclaims.

Therefore, Oneida's motion to amend its complaint to add Steelite Distribution as a defendant, and to bring claims against it is denied. Oneida is granted leave to bring those claims as counterclaims against Steelite Distribution.

However, the Court finds that the Plaintiff has shown good cause as to why the remainder of its motion should be granted. The motion was filed in a timely manner; no parties would be prejudiced by the amendments; and no parties currently claim that the amendments would be futile.

Therefore, Oneida's motion to amend its complaint is granted in part, and denied in part. It is denied to the extent that Oneida is not permitted to add Steelite Distribution as a defendant, or to bring any claims against them. As stated above, Oneida is granted leave to bring its claims against Steelite Distribution as counterclaims. The remainder of Oneida's motion to amend is granted, including its motion to supplement the motion to amend.

## III. CONCLUSION

For the reasons stated above, the Steelite Defendants' motion to dismiss Oneida's claims for misappropriation of trade secrets and unfair competition pursuant to Rule 12(b)(6) is denied in its entirety; the Tablewerks Defendants' motion to dismiss pursuant to Rule 12(b)(6) is granted and Oneida's claims for tortious interference with business relations against those Defendants is dismissed without prejudice with leave to replead within thirty days; Steelite Distribution's motion to intervene pursuant to Rule 24 is granted to the extent that it is entitled to permissive intervention; and Oneida's motion to amend its complaint pursuant to Rule 15 is granted except to the extent that it seeks to add claims against Steelite Distribution—as stated above, those claims must be brought as counterclaims.

The Clerk of the Court is respectfully directed to amend the official caption to reflect the following:

```
------------------------------------------------------------------------x
```
THE ONEIDA GROUP INC.,

                      Plaintiff,

              - against -

                                                    17-cv-0957 (ADS)(AKT)

STEELITE INTERNATIONAL U.S.A. INC.,
TABLEWERKS INC., RICHARD ERWIN, STEVEN
LEFKOWITZ, ANTHONY DELOSREYES, and
ROBERT FINLEY

                      Defendants,

and

STEELITE DISTRIBUTION, LLC

                      Intervenor-Plaintiff

              - against -

THE ONEIDA GROUP INC.,

                      Defendant.
```
------------------------------------------------------------------------x
```

       Oneida is directed to file an amended complaint within thirty days that complies with the dictates of this order; and if it wishes to do so, it may amend its claims for tortious interference with business relations against the Tablewerks Defendants.

       This matter is respectfully referred to Magistrate Judge A. Kathleen Tomlinson for the remainder of discovery.

**SO ORDERED:**

Dated: Central Islip, New York

December 15, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge